412 A.2d 605

**Daniel KESSLER, Appellant,**

v.

**Mary Ann GREGORY and Catholic Charities, Inc.**

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed Oct. 17, 1979.

122

Jon M. Lewis, Greensburg, for appellant.

Samuel R. DiFrancesco, Sr., Johnstown, for appellee Mary Ann Gregory.

Before CERCONE, P. J., and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends, *inter alia*,[1] that the lower court erred in failing to file a comprehensive opinion fully discussing the evidence in support of its order awarding custody to appellee Mary Ann Gregory of their daughter Christine. We agree and, accordingly, vacate the order of the lower court and remand for a comprehensive opinion. In addition, because the record is incomplete, the hearing judge shall hold an additional hearing on remand consistent with this opinion.

Appellant and appellee Mary Gregory (hereinafter appellee) were married on November 29, 1975. The parties were divorced on May 13, 1977. Christine was born on August 31, 1977. Appellee placed Christine with Catholic Charities, Inc.[2] on September 3, 1977. On February 2, 1978, appellant filed a petition for a writ of habeas corpus to obtain custody of Christine. On July 14, 1978, appellee filed a counter-petition for a writ of habeas corpus.

The lower court held hearings on March 20, 1978, May 4, 1978, and July 17, 1978. Much of the testimony at these hearings concerned appellant's admission that, while he was married to appellee, he had engaged in transvestism (dressing in women's apparel) in the presence of appellee. Appellant sought medical treatment for this condition, and his psychiatrist, Dr. James Frye, testified that, in his opinion, appellant was cured. The record contains a report by William C. Ryan, M.D., who was retained by appellee to examine appellant, but Dr. Ryan was not called as a witness. The record also contains a report by James S. Burgbacher, M.D., who diagnosed appellee as suffering from "reactive depression." Dr. Burgbacher was not called to testify.

Appellant testified at the May 4, 1978, hearing that he graduated from the United States Merchant Marine Academy and was employed as a marine safety inspector in the United States Coast Guard. His position with the Coast

1. Because of our disposition of this case, we need not consider appellant's other contentions.

2. Appellee Catholic Charities, Inc. did not participate in this appeal.

Guard was to end on June 23, 1978, and he had not yet secured new employment. Appellant stated that if he obtained custody of Christine, she would live temporarily in his parents' home. He described their home and stated that Christine would have her own bedroom.

Appellee testified at the July 17, 1978, hearing that she was a high school graduate and received practical nurse training for one year. She has not been employed since her marriage and is supported by her parents. Appellee stated that if she obtained custody of Christine, they would reside with appellee's sister and the sister's child in one part of appellee's parents' home. Appellee's parents also testified at the July 17 hearing.

The hearing judge, on March 20, 1978, issued an order directing Children's Services of Cambria County to evaluate the homes of the parents of appellant and appellee and submit a report to the court. However, such a report does not appear in the record, and no one from Children's Services testified at any of the hearings. On July 17, 1978, the hearing judge issued an order granting custody of Christine to appellee. The hearing judge did not discuss the evidence or the basis of his decision in the order or in his opinion.[3]

■ "It is fundamental that in all custody disputes, the best interests of the child must prevail; all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well-being." *Garrity v. Garrity*, 268 Pa.Super. 217, 221, 407 A.2d 1323, 1325 (1979). "Moreover, we have often restated the rule that custody must be determined on the basis of facts as they exist at the time of the habeas corpus hearing." *In re Leshkovich*, 253 Pa.Super. 349, 357, 385 A.2d 373, 377 (1978). Among the factors to be considered in determining the best interests of the child are the character and fitness of the parties seeking custody, their respective homes, their ability to adequately care for

---

**3.** The hearing judge stated in the opinion: "[U]pon full consideration and upon review of the above matter, I find that the Order of July 17, 1978 is proper under all of the evidence submitted, and further that the Court did not abuse its discretion.  .  .  . "

the child, and their ability to financially provide for the child. *Shoemaker Appeal,* 396 Pa. 378, 381, 152 A.2d 666, 668 (1959). However, " 'Unless the income of one party is so inadequate as to preclude raising the [child] in a decent manner, the matter of relative incomes is irrelevant.' " *Custody of Myers,* 242 Pa.Super. 225, 230, 363 A.2d 1242, 1244 (1976) (quoting *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 239, 312 A.2d 58, 64 (1973)).

■ In a custody case, " 'reports of investigators, agents, and doctors cannot be received in evidence, or considered by the court, in a contested case. . . . The investigators, agents, doctors, etc., must themselves be produced, sworn and examined as witnesses and be subject to cross-examination.' " *Wood v. Tucker,* 231 Pa.Super. 461, 463, 332 A.2d 191, 192 (1974) (quoting *Commonwealth ex rel. Oncay v. Oncay,* 153 Pa.Super. 569, 570, 34 A.2d 839 (1943)). *See also Rummel v. Rummel,* 263 Pa.Super. 97, 397 A.2d 13 (1979).

"This court has repeatedly made plain that in a child custody case two requirements must be satisfied: the record must be complete; and the hearing judge must by his opinion give us the benefit of a thorough analysis of that record." *Gunter v. Gunter,* 240 Pa.Super. 382, 390, 361 A.2d 307, 311 (1976). "Where the hearing judge has failed to comply with these requirements, we have not hesitated to remand." *Commonwealth ex rel. Schall v. Schall,* 251 Pa.Super. 262, 263–64, 380 A.2d 478, 479 (1977). *See also Bedio v. Bedio,* 268 Pa.Super. 231, 407 A.2d 1331 (1979); *Garrity v. Garrity, supra; Valentino v. Valentino,* 259 Pa.Super. 395, 393 A.2d 885 (1978) (per curiam).

■ Because the record in this case is incomplete, we must remand for the taking of additional testimony. For example, two medical reports were introduced into evidence at the hearings, but the physicians were not called to testify. The physicians must testify if those reports are to be considered by the hearing judge. *Wood v. Tucker, supra.* Similarly, the report of Children's Services of Cambria County should not be considered by the hearing judge unless the parties are given the opportunity to call witnesses to contradict or explain the report. Moreover, because at the time

the hearings were held appellant had not secured employment following his discharge from the Coast Guard, and he was not certain where he would reside if he obtained custody of Christine, the hearing judge should hold a hearing to update these matters. On remand, the lower court should allow the introduction of any other evidence which will assist the court in determining whether granting custody to appellant or appellee would be in the best interest of Christine. At the conclusion of the hearing, the hearing judge shall file a comprehensive opinion containing a thorough analysis of the evidence.

Order vacated and case remanded for proceedings consistent with this opinion.