421 A.2d 706

COMMONWEALTH of Pennsylvania ex rel. LEIGHANN A. and Johnny A.

v.

LEON A.

**Appeal of BARBARA A. S.**

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Aug. 29, 1980.

James Hook, Waynesburg, for appellants.

John A. Stets, Waynesburg, for appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant–mother contends that the lower court erred in awarding custody of her two minor children to appellee–father. We are unable, however, to consider the merits of her appeal and instead remand for proceedings in accordance with this opinion.

This case involves a dispute over custody of the parties' two children, Leighann, 5, and Johnny, 4. The mother instituted habeas corpus proceedings in May, 1978, after the father left their marital home, taking the two children with him. The lower court conducted the first of several hearings on the matter in June, 1978, and at that time issued an interim order which, in effect, continued custody in the father subject to supervision by Children and Youth Services of Greene County (Children and Youth Services), provided for investigation of the parties' respective homes,[1] and es-

1. At the time the court issued this order, the mother was living at her family's home in Northfield, Ohio, and the father and children were living at the home of his mother and sisters in Monessen, PA. During the pendency of these proceedings the parties were divorced,

tablished visitation rights for the mother. Approximately one month later the court conducted a second hearing to consider allegations that the mother's brother Dale had sexually abused the children while they were visiting the mother at her family's home in Ohio. The court then issued another interim order which continued the custody and visitation scheme already in effect and provided safeguards to insulate the children from any possible contact with Dale. Between September, 1978, and August, 1979, the lower court conducted four more hearings in the matter, during which it heard evidence of two more possible incidents of sexual abuse of the children by Dale,[2] as well as other evidence germane to the question of which parent should be awarded custody.[3] At the last of these hearings, in August, 1979, Dr. Edward W. Patterson, a clinical psychologist, testified regarding his psychological examinations of the parties and Dale and his interviews with the children. At the conclusion of this hearing the lower court entered its final order in which it awarded custody of the children to the father and established visitation privileges for the mother. This appeal followed.[4]

and both moved to new residences. The mother remarried and took up residence with her new husband in a mobile home in Carmichaels, PA. The father moved to a house of his own in Monessen, PA.

2. The lower court found "the allegation [of sexual abuse by Dale to have been] proven by a fair preponderance," but it did not specify which of the three allegations of abuse to which it was referring. Opinion of the lower court at 3. At no time was the mother implicated in any of the allegations of abuse.

3. On January 22, 1979, the court issued an interim order transferring custody of the children to Children and Youth Services subject to supervised visitations by both parents on alternating weekends. Subsequently, on July 30, 1979, the court suspended visitation privileges pending its final disposition of the case.

4. We note with disapproval that appellant's brief deviates substantially from the requirements of our Rules of Appellate Procedure, most notably Pa.R.App.P. 2119(a), which states that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part–in distinctive type or in type distinctively displayed–the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."

"It is fundamental that in all custody disputes, the best interests of the child must prevail; all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well being. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A.2d 625 (1972); *Commonwealth ex rel. Holschuh v. Holland–Moritz,* 448 Pa. 437, 292 A.2d 380 (1972)." *Garrity v. Garrity,* 268 Pa.Super. 217, 221, 407 A.2d 1323, 1325 (1979). "Among the factors to be considered in determining the best interests of the child are the character and fitness of the parties seeking custody, their respective homes, their ability to adequately care for the child, and their ability to financially provide for the child. *Shoemaker Appeal,* 396 Pa. 378, 381, 152 A.2d 666, 668 (1959)." *Kessler v. Gregory,* 271 Pa.Super. 121, 124–125, 412 A.2d 605, 607 (1979).

In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett,* 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer,* [263 Pa.Super. 27, 396 A.2d 1359 (1979)]; *Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all the pertinent facts and circumstances of the contesting parties have been fully explored and developed. *See Sipe v. Shaffer, supra; Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. *See Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and

conclusions. *See Valentino v. Valentino,* 259 Pa.Super. 395, 393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.* Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. *See Valentino v. Valentino, supra; Commonwealth ex rel. Forrester v. Forrester,* 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra.*

*Lewis v. Lewis,* 267 Pa.Super. 235, 240–241, 406 A.2d 781, 783–84 (1979).

Our ability to review the order in the present case is hampered by deficiencies in the record. There is, for example, no evidence in the record concerning the suitability of the father's home. At the most recent hearing in the case counsel for Children and Youth Services admitted that his agency had conducted no evaluation of the father's home.[5] This fact alone is reason enough for us to remand the case for further proceedings. *See Commonwealth ex rel. Mary Ann S. v. Daniel S.,* 278 Pa.Super. 577, 420 A.2d 692 (1980) (remanding custody case where lower court had entered order on basis of insufficient record). *See also Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978) (recommending independent evaluation of homes of both parties seeking custody).

Additionally, there is almost no evidence regarding the comparative financial situations of the parties. The record reveals that the father was making $5.00 per hour as an automobile mechanic as of April, 1979, but it is silent as to the father's overall financial capacity to provide for the children. Some evidence of the mother's financial situation is contained in Children and Youth Services' investigation of her home, but the matter was virtually ignored by both

---

**5.** The agency did, however, evaluate the mother's new home and stated in a report included in the record that it had "no objections or . . . concerns regarding the suitability of the physical environment."

parties during the hearings. In *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973), we stated that "[u]nless the income of one party is so inadequate as to preclude raising the children in a decent manner, the matter of relative incomes is irrelevant." *Id.*, 226 Pa.Super. at 239, 312 A.2d at 64. *See also Kessler v. Gregory, supra; In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976). In the present case, however, the paucity of evidence renders us unable to make any appraisal whatsoever of the parties' relative financial situations.

In addition to lacking a complete record, we are without the comprehensive opinion necessary for proper appellate review. *Garrity v. Garrity, supra; Lewis v. Lewis, supra.* Although the lower court demonstrated an abundance of patience and genuine concern for the welfare of the children throughout the numerous hearings which it conducted, its opinion lacks an analysis of evidence critical to the custody determination. For example, although both parties presented evidence outlining how they intended to care for the children if they were awarded custody,[6] the opinion contains no discussion of this evidence. More importantly, we are without the lower court's guidance on the subject of the parties' relative fitness to have custody of the children. There was substantial evidence presented over the course of the hearings relating to this matter.[7] Yet, the opinion does not address the essential question of the parties' fitness, and instead is devoted almost entirely to a discussion of the psychological effect on the children of Dale's act or acts of abuse and its relationship to the custody decision. The court expressly noted its heavy reliance on the testimony of Dr. Patterson and cited the doctor's conclusions that the chil-

---

**6.** The mother stated that she would stay at home to care for the children; the father, employed full time, planned to employ a baby-sitter.

**7.** There were times, in fact, when the hearings more closely resembled proceedings in divorce, with testimony suggesting promiscuity on the part of the mother and drunken fits of rage on the part of the father.

dren's experience with Dale "had become . . . ingrained in their minds, and was associated in their minds with their mother and her family as being where and why it occurred, and . . . had left deep emotional scars . . . that could not easily be removed." Opinion of the lower court at 4. The *present effect* of prior acts of abuse while in the custody of one parent certainly is relevant to a determination of children's physical, moral, emotional, and spiritual well–being. Nonetheless, we believe that the lower court gave disproportionate weight to the actual fact of the prior act(s) of abuse in its determination of the best interests of the children. We have often emphasized that " 'custody must be determined on the basis of facts as they exist at the time of the habeas corpus hearing.' " *Kessler v. Gregory, supra,* 271 Pa.Super. at 124, 412 A.2d at 607 (quoting *In re Leskovich,* 253 Pa.Super. 349, 357, 385 A.2d 373, 377 (1978)). Accordingly, it will be necessary on remand for the lower court to address itself to *all* relevant facts as they exist at the time of the supplemental proceedings which must be held.

Because of the deficiencies in both the record and the lower court's opinion, we must remand this case for further proceedings. On remand the lower court shall allow introduction of any additional evidence pertinent to the issue of custody of the children, including, but not limited to, evidence regarding the suitability of the father's home and the parties' financial situations. Moreover, the court shall allow the parties to update the evidence to reflect any circumstances relating to the best interests of the children which may have changed during the intervening months since the court last heard evidence in this case. Finally, the lower court shall file a comprehensive opinion which thoroughly analyzes the evidence and states the reasons for its ultimate decision.

Order vacated and case remanded for proceedings consistent with this opinion.