634 A.2d 163

**Jonathan C. MOORE, Appellee,**

**v.**

**Rachel M. MOORE, Appellant.**

Supreme Court of Pennsylvania.

Argued May 7, 1992.

Decided Nov. 5, 1993.

Karen L. Semmelman, York, for appellant.

John C. Mooney, III, Hanover, for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This case questions the propriety of the decision of the trial court in a custody case to grant a petition for reconsideration and rehearing. In addition to addressing the procedural questions raised, we must determine if the Superior Court applied the proper standard in reviewing the determination of custodial rights made by the trial court. For the reasons that follow we find that the trial court did not abuse its discretion in granting the petition for reconsideration and re-hearing; we also find that the Superior Court did not follow the proper standard of review, 393 Pa.Super. 256, 574 A.2d 105 and thus reverse.

The parties to this custody action were married on December 19, 1981 while they were both pursuing their undergraduate studies in Florida. In August of 1985 they moved to Lancaster, Pennsylvania and took up residence with the mother's parents (hereinafter the grandparents). Their son, Nicholas, was born on October 6, 1985. During this time period the grandparents provided financial support for the parties including the cost of father's continuing college education.

In the summer of 1986, mother, father and Nicholas resided with father's parents in Florida. The parties returned to the home of the grandparents in Pennsylvania in September 1986. At this point mother and father were experiencing marital difficulties and began counseling with their pastor. The mother had begun taking art classes at York college in Philadelphia. Father, rather than continuing his college education, sought full-time employment. The parties physically separated in November of 1986.

Upon separation mother and father, with the aid of their pastor, worked out a shared custody arrangement which provided that each parent would have Nicholas for two consecutive days in a rotating fashion. This arrangement continued until father began his present job in Hanover, Pennsylvania. Along with the new job, father moved farther away from the grandparents' home, and thus a revised shared custody arrangement was necessitated. Accordingly, mother and father, again with the assistance of their pastor, arranged a custody schedule whereby Nicholas would be with father from Sunday evening through Thursday evening and with mother Thursday evening through Sunday. This schedule was to be in place September through May as the mother was in school Monday through Thursday, and then reverse during the summer months.

During the fall of 1987 the parties began experiencing difficulties in agreeing upon modifications in the shared custody arrangement. Mother wanted greater flexibility in spending time with Nicholas during her school breaks. Father wanted to have more time with Nicholas on the weekends during the school year and to change the summer schedule to

alternating seven day weeks, rather than the four day/three day schedule.

On February 25, 1988, father filed a petition to affirm primary physical custody of Nicholas with father. On March 21, 1988, mother filed a petition seeking primary physical custody of Nicholas. A pre-hearing conference was held on April 11, 1988, at which time the parties were unable to come to an agreement. Accordingly, an order was entered scheduling a full hearing on the cross-petitions for primary physical custody. The existing shared custody arrangement was to remain in effect until the hearing. On June 1, 1988 the mother filed an amended petition for physical custody, reflecting the fact that she intended to relocate to the state of Florida in September of 1988, in order to complete her college education. In addition, mother requested that a hearing date on the custody matter be scheduled prior to her move to Florida.

Pending the hearing on their petitions, the mother moved to Jacksonville, Florida and began school. The parties agreed that, until the hearing, Nicholas would remain with the father in Pennsylvania, with mother returning to Pennsylvania for visitation at least one weekend per month. In addition, grandparents were to have visitation with Nicholas one weekend per month. During this period mother received longer visitation with Nicholas during her holiday breaks and when father brought Nicholas to Florida.

On February 7, 1989, a hearing on both petitions was held. Testimony at that hearing was limited to the following witnesses: mother; father; Connie Marshall, a social worker who conducted a home study evaluation of the grandparents' home in Lancaster, Pennsylvania; and Kelly Olewiler, a woman who watched Nicholas in her home on the days father had custody, during the hours father was at work. On February 10, 1989, the court entered an order awarding primary physical custody to father. In that order the trial court found that both parents were "suitable to serve as majority physical custodian of Nicholas"; however, the court went on to conclude that, as Nicholas had been in the primary custody of father since

September of 1988, there was no reason to alter the status quo, and thus majority physical custody was awarded to father. (Order of February 10, 1989 pp. 4–5.)

On February 28, 1989, mother filed a Petition For Re-Hearing and Reconsideration of the February 10, 1989 custody order. Mother had withdrawn from her college in Jacksonville, Florida and resumed residence in the grandparents' Lancaster, Pennsylvania home. In her petition for reconsideration, mother argued that the trial court had abused its discretion in finding that the period from September 1988 through February 1989, while Nicholas was in the primary physical custody of father, reflected the status quo, and that the record in this case was incomplete, thus precluding the trial court from reaching a custody decision that truly reflected what was in the best interests of Nicholas.

On March 13, 1989, following argument, the trial court vacated its February 10, 1989 order and granted the mother's request for rehearing and reconsideration. A supplemental hearing was scheduled for May 18, 1989. The trial court further ordered that the prior shared custody arrangement of alternating custody on a three-day/four-day schedule was to be in effect until the supplemental hearing.

At the Supplemental Hearing, the parties agreed to adopt and incorporate testimony from the February 7, 1989 hearing and present additional testimony. At the supplemental hearing the trial court heard testimony from: mother; Reverend Michael Alleman, the pastor who had counseled mother and father assisting them in reaching the original shared custody arrangements regarding Nicholas; Carol John and Susan Lovejoy, two friends of mother who spent a great deal of time with mother while Nicholas was in her custody; Marjorie Martyniak, mother's future mother-in-law; the maternal grandparents; Dr. Schnieder, a clinical psychologist, hired by mother, who interviewed and tested mother, father, and Nicholas as well as the fiancee and girlfriend of mother and father; Richard Martyniak, mother's fiancee; Barbara Benson, a psychiatric social worker who had been counseling mother; and Rebecca Rogers, mother's sister. Testimony was also heard

from: father; Tammy Colgan, a child care worker at Nicholas' day care center in Hanover, Pennsylvania; Jane Ingram, a friend and co-worker of father who had spent time in father's company while he was with Nicholas; and Machelle Serafin, father's girlfriend.

On June 2, 1989, following the Supplemental Hearing, the court entered an order awarding primary physical custody to mother. The trial court stated in the order that although both parents would foster a suitable environment for Nicholas, the court found the mother to be more flexible in arranging a shared custody schedule that would provide the father more access to Nicholas than the father would foster if he were to have primary custody. The mother would also be more supportive of continuing contact between Nicholas and the grandparents.

On appeal the Superior Court found that the trial court was without jurisdiction to grant the petition for reconsideration as its order of March 13, 1989 was beyond thirty days of the original order dated February 10, 1989. Thus, on April 30, 1990 the Superior Court vacated the trial court order of June 2, 1989 and reinstated the order of February 10, 1989, thereby returning primary physical custody of Nicholas to the father. On May 30, 1990 the Superior Court denied the mother's application for supersedeas, filed a corrected opinion, and reaffirmed its order of April 30, 1990. In its corrected opinion, the Superior Court acknowledged that the trial court did have jurisdiction to enter the order granting reconsideration as the thirtieth day, March 12, 1989, was a Sunday. However, they found that the petition for reconsideration was in essence a post-trial motion which is specifically prohibited by the rules of procedure applicable to custody cases, and thus, the trial court was without authority to grant reconsideration. *See* Pa.R.C.P. 1915.10(b).

On March 15, 1991 this Court granted the mother's petition for allowance of appeal and her petition for supersedeas, whereby Nicholas was returned to the primary physical custody of the mother.

██ Our review of this case must begin with the Superior Court's determination that the trial court was without authority to grant reconsideration of its February 10, 1989 order. Simply stated, the learned Superior Court was incorrect. A motion for reconsideration is not a post-trial motion. A motion for reconsideration is addressed to the sound discretion of the trial court and may be filed within thirty days of the date of the order upon which reconsideration is sought. *See Schoff v. Richter*, 386 Pa.Super. 289, 562 A.2d 912 (1989); Pa.R.App.P. 1701. The reliance by the Superior Court on the prohibition against filing post-trial motions in custody cases and to the decision in *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988), was not applicable to this case.

██ In *Seger*, the appellee sought to quash the appeal on the basis that the issues upon appeal were waived as appellant had failed to file post-trial motions. The Superior Court properly denied appellee's request, as post-trial motions are not a prerequisite in appealing a custody determination. *Id.* at 394, 547 A.2d at 425; *In re Custody of Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (1980); Pa.R.C.P. 1915.10(b). As the *Seger* Court correctly pointed out, post-trial motions are an unnecessary step in a custody appeal as the concept of waiver would be inappropriate in a case where the welfare of the child is the ultimate concern of the Court. *Seger* at 394–395, 547 A.2d at 425–426.[1]

██ The decision in *Seger* is not pertinent to the issue in this case. A trial court always has the authority to reconsider its own judgment. The question of whether or not to exercise that authority is left to the sound discretion of the trial court.

1. Post-trial motions embody the concept of waiver. Issues not raised pre-trial, during trial and then preserved in a post-trial motion cannot be raised on appeal. In addition, post-trial motions stay the appeal period. Pa.R.C.P. Rule 227.1. Petitions for reconsideration do not stay the appeal period. Pa.R.App.P., Rule 1701(b)(3). Also, there is no requirement that grounds for a petition for reconsideration be raised during the trial or during the pre-trial period. *See Commonwealth of Pennsylvania, Pennsylvania Liquor Control Bd. v. Willow Grove Veterans Home Ass'n.*, 97 Pa.Commw. 391, 509 A.2d 958 (1986); *Pedersen v. South Williamsport Area School Dist.*, 80 Pa.Commw. 292, 471 A.2d 180 (1984).

Rule 1701(b) of the Pa.R.App.P. codified this well established principle regarding the inherent authority of the trial court, and clarified the fact that a motion for reconsideration does not act as a stay of the appeal period.[2] *See Corabi v. Curtis Publishing Co.*, 437 Pa. 143, 262 A.2d 665 (1970). Thus, the Superior Court erred in finding that the trial court was without authority to grant reconsideration and vacate its order of February 10, 1989.

In the appeal before this Court, the father argues that the trial court was not only without authority to grant reconsideration, but the court was also without authority to allow the supplemental hearing. As we have stated above, it was clearly within the power of the trial court to grant the petition for reconsideration. Since a motion for reconsideration is addressed to the sound discretion of the trial court, the trial court is obviously in the best position to decide if additional testimony, briefs or argument are necessary to the court in reassessing its original order. In the context of a custody case a trial court must ensure that as full and complete a record as possible is created when a decision as important as the welfare of a child is at issue. In *Tettis v. Boyum*, 317 Pa.Super. 8, 463 A.2d 1056 (1983) the Superior Court reversed and remanded a custody case to the trial court for failure to create a complete record.

**2.** Pa.R.App.P. 1701(b)(3)(i) provides:

(b) **Authority of a Trial Court or Agency After Appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other governmental unit may:

(3) Grant reconsideration of the order which is the subject of the appeal or petition if:

(i) an application for reconsideration of the order is filed in the trial court or other governmental unit within the time provided or prescribed by law.

We further note, contrary to appellee's contention, that a notice of appeal is not a prerequisite to the filing of a motion for reconsideration. See the note following the rule which offers the following explanation:

Subdivision (b)(3) is intended to handle the troublesome question of the effect of application for reconsideration on the appeal process. The rule.... eliminates the possibility that the power to grant reconsideration could be foreclosed by the taking of a "snap" appeal.

As we have cautioned the lower courts time and again, in order to assess the best interests and general welfare of the child or children, it is the duty of the trial judge to make the fullest possible inquiry in custody actions. *Commonwealth ex rel. Cox v. Cox,* 255 Pa.Super. 508, 388 A.2d 1082 (1978); *Commonwealth ex rel. Ashfield v. Cortes,* 210 Pa.Super. 515, 234 A.2d 47 (1967). All pertinent facts and circumstances surrounding the contesting parties must be fully explored and developed. *Sipe v. Shaffer,* 263 Pa.Super. 27, 396 A.2d 1359 (1979). The hearing judge should consider the character and fitness of the respective parties, the type of home they can offer, their ability to financially provide for the child. *Gerald G. v. Theresa G.,* 284 Pa.Super. 498, 502, 426 A.2d 157, 159 (1981), quoting *Commonwealth ex rel. Leighann A. v. Leon A.,* 280 Pa.Super. 249, 252, 421 A.2d 706, 708 (1980).

*Tettis,* 317 Pa.Super. at 23, 463 A.2d at 1064.

In light of the unique obligation placed upon the trial court in a custody case, to consider all pertinent information regarding the issue of what is in the best interest of the child, we can find no abuse of discretion by the trial court herein, in holding the supplemental hearing.[3] Our conclusion that the trial court did have the authority to grant reconsideration and to schedule a supplemental hearing, does not close our review of this matter. Although the Superior Court in their review determined that the trial court was without jurisdiction to grant reconsideration, they gratuitously went on to review the determination of custodial rights made by the trial court. Therefore, having resolved the procedural aspects of the case, we must now turn to the question of whether the Superior Court applied the proper standard of review in reversing the custodial determination of the trial court.

---

**3.** Although we find no abuse in discretion by the trial court in this case, in granting the motion for reconsideration and in holding the supplemental hearing, we would point out that we have complete faith in the ability of our trial judges to distinguish those cases in which reconsideration should be granted from those situations where further argument or testimony would be useless.

28

■  The proper standard of review for an appellate court in a custody case was recently reaffirmed by this Court in *McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992):

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984); *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977) (plurality). However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. *Lombardo v. Lombardo*, 515 Pa. 139, 146, 527 A.2d 525, 529 (1987). Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.[4]

As recognized herein by both the trial court and the Superior Court, the primary concern in a child custody case is the best interest of the child. *McMillen, id.* 529 Pa. at 202, 602 A.2d at 846. At the time the trial court was making its determination, June 2, 1989, Nicholas was four and one half

4. We wish to point out that in spite of our recent articulation of the standard of review in *Lombardo* and *Robinson* as a "gross abuse of discretion," whether the standard is articulated as an "abuse of discretion or as a "gross abuse of discretion," the test remains the same: whether the trial court's conclusions are unreasonable as shown by the evidence of record. Thus, we deem the use of the verbiage "gross" to be mere surplusage and we will henceforth articulate the standard as an "abuse of discretion."

We further note that although the *McMillen* Court used the phrase "scope of review" it is obvious that they were clearly defining the "standard of review." The "scope of review" refers to the jurisdiction of the court to review properly preserved issues, while the "standard of review" sets forth the guidelines within which the properly preserved issues will be considered and decided.

years old. Nicholas' parents had separated shortly after his first birthday. For most of the three and one half years of that separation the parents had been sharing fully the responsibility of caring for Nicholas. Father had primary custody of Nicholas for the five month period of September 1988 through January 1989 while the parties awaited their day in court on the cross petitions for primary custody.[5] From February 1989 until the order of June 2, 1989 the parties resumed their shared custody arrangement of alternating custody on a rotating schedule of Thursday through Sunday. The parties were no longer able to continue with a shared custody arrangement, as the mother intended to reside permanently in Florida.

The trial court found that both parents love Nicholas and are concerned about his intellectual, emotional and physical development. Nicholas relates well to both parents. Both parents are willing to act as majority physical custodian of Nicholas and both can provide financially for Nicholas as well as provide adequate living arrangements and religious training. Due to the fact that geography would prohibit the parties from continuing with their shared custody arrangement, the trial court focused upon which parent would best encourage and foster a continuing relationship with the non-custodial parent.

The testimony of record, particularly that of the mother and father, clearly supports the trial court's finding that the mother is more flexible and willing to share custody with the father, than the father is with the mother. The father repeatedly stated his preference for a definitive custodial arrangement, which he believed provided the greatest stability for Nicholas. The mother showed greater concern for providing Nicholas with a flexible custodial arrangement which would allow both parents, and the maternal grandparents, the most open and reasonable access, in light of the geographic restraints caused by her relocating to Florida. The trial court

5. The mother testified that she left for Florida in September of 1988 believing that the custody hearing would be held within a few weeks of her departure. The hearing was originally scheduled for November 28, 1988.

found the testimony of the parties to be consistent with the observations and test results as reported by Dr. Schnieder, the clinical psychologist who had been retained by mother to interview all the parties in this case.

In reaching her final decision the trial court took into consideration all the testimony and her own observations of the parties, and placed considerable weight upon the expert testimony of Dr. Schnieder. The trial court determined that it would be in the best interest of Nicholas to award primary physical custody to mother, as she would best promote and encourage the relationship between Nicholas and father. In addition, although the trial court noted this was a secondary factor, the mother would best promote a continuing relationship between Nicholas and the maternal grandparents.

The Superior Court found that the trial court abused its discretion in awarding primary physical custody to mother, because it based its decision on Dr. Schneider's testimony that "mother would likely encourage a relationship between Nicholas and his father and grandparents, without finding any evidence that father was not a fit parent or was neglecting his duty as primary caretaker." *Moore v. Moore*, 393 Pa.Super. 256, 259, 574 A.2d 105, 108 (1990).

As we have stated repeatedly, the paramount concern in child custody proceedings is the best interest of the child. *McMillen*, 529 Pa. at 202, 602 A.2d at 846; *Robinson*, 505 Pa. at 226, 478 A.2d at 804. This Court has held that custody can be changed without proof of substantial change in circumstances when it is shown that the change is in the best interest of the child. *McMillen*, 529 Pa. at 202, 602 A.2d at 847; *Karis v. Karis*, 518 Pa. 601, 544 A.2d 1328 (1988). Thus, the Superior Court erred when it determined that evidence must be introduced proving that the father was not a fit parent or that he was neglecting his duty as primary caretaker before a change of custody could be ordered. As this Court emphatically stated in *Karis*, there is no need for either parent to prove that something is wrong with the current custody arrangement, or that some dramatic change has oc-

curred before the court will consider a request to alter the custody arrangement. Whenever a court is called upon to determine custody the central focus is the best interest of the child, and with that paramount concern in mind, traditional burdens or presumptions such as; substantial change in circumstances; or the fitness of one parent over another; or the tender years doctrine, must all give way.

Thus, the Superior Court exceeded its proper standard of review when it chose to focus upon whether or not the mother had established that the father was an unfit parent, rather than whether the trial court's award of custody reflected what was in the best interests of Nicholas and whether that award was reasonable under the facts and circumstances of the instant case. Instead the Superior Court erroneously substituted its own judgment for that of the trial court.[6] Although the Superior Court did not apply the proper standard of review in its review of the custodial determination made by the trial court, this Court has thoroughly reviewed the record and we find no abuse of discretion by the trial court.

Accordingly, we now vacate the Order of the Superior Court which granted primary physical custody to the father, and reverse the decision of that learned Court. We further Order reinstatement of the June 2, 1989 order of the trial court, awarding primary physical custody to the mother.

LARSEN, J., did not participate in the consideration or decision of this case.

6. The Superior Court opinion cites with approval *Davidyan v. Davidyan*, 229 Pa.Super. 495, 327 A.2d 139 (1974), as standing for the proposition that "[i]f all other factors are approximately equal, the court should prefer a resident to a non-resident guardian and custodian" (quoting *Shoemaker Appeal*, 396 Pa. 378, 382, 152 A.2d 666, 669 (1959). The Superior Court then goes on to say that, in the instant case, the trial court did not have to rely on that premise because all other factors were not equal. Thus, the resolution of that issue was irrelevant to the instant case and any reference to it by the Superior Court was unwelcome dicta. Furthermore, not only was reference to that issue irrelevant to the instant matter, it was also an incorrect statement of the law. This Court has held that removal to another jurisdiction is not controlling in custody matters. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 299, 426 A.2d 555, 558 (1981).

McDERMOTT, J., did not participate in the decision of this case.