**James BOVARD, Appellee**

v.

**Jeanne L. BAKER, Appellant.**

Superior Court of Pennsylvania.

Argued March 13, 2001.
Filed April 25, 2001.

Llissa Zimmerman, Duncansville, for appellant.

Richard A. Behrens, Hollidaysburg, for appellee.

Before ORIE MELVIN, TODD, and KELLY, JJ.

TODD, J.:

¶ 1 Jeanne L. Baker ("Mother") appeals the October 3, 2000 Order of the Court of Common Pleas of Blair County granting her and James Bovard ("Father") joint legal custody of their four children, but granting primary physical custody of the children to Father. We vacate the order and remand for an evidentiary hearing.

¶ 2 Father filed a divorce action against Mother in 1993. The parties have been

separated since that time, and subsequently were divorced. Four children were born of this marriage: Rachel Bovard, Brittany Bovard, Kaitlin Bovard, and Brooke Bovard, who, at the time of the custody hearings which are the focus of this appeal (April and June 2000) were 16, 14, 12, and 10, respectively. Since their separation, Mother and Father have been unable to settle custody issues regarding their daughters without judicial intervention. Indeed, at least eight separate custody orders have been entered since 1993, establishing a complicated and, apparently for everyone concerned, frustrating custody arrangement.

¶ 3 On August 25, 1999, Mother filed a petition to modify custody, asserting that the custody schedule had become unworkable for the parents and the children. At that time, the custody orders of April 17 and July 10, 1998 were controlling. Under those orders, primary physical custody of

Brittany was placed with Father, and primary physical custody of Rachel, Kaitlin, and Brooke was placed with Mother. The orders, which together total 20 pages of directives, necessitated several exchanges of the girls between Mother and Father each week. Father filed his own petition to modify custody on October 8, 1999, seeking a simplified shared physical custody arrangement.

¶ 4 Attempts at conciliation of the petitions were unfruitful and, as a result, the trial court held a custody hearing over three days in April and June, 2000. On October 3, 2000, the court, by the Honorable Thomas G. Peoples, Jr., President Judge, issued an order granting shared legal custody of the children to Mother and Father, primary physical custody of all the children to Father, and partial physical custody to Mother, pursuant to a specified schedule.[1] Mother's motion for reconsideration was denied, and this timely appeal followed.

---

1. The order states in full:

NOW, this 3rd day of October, 2000, **IT IS HEREBY ORDERED, DIRECTED AND DECREED** that effective immediately joint shared legal custody of the minor children of the parties, namely, Rachel C. Bovard, born October 22, 1983, Brittany N. Bovard, born September 25, 1985, Kaitlin D. Bovard, born October 23, 1987, and Brooke D. Bovard, born June 19, 1990, is hereby placed with and vested in their Father, James H. Bovard, and their Mother, Jeanne L. (Bovard) Baker, and each parent shall be afforded input as to decisions regarding the medical, dental, religious and academic/educational needs along with the general welfare of each of the minor children and it shall be the responsibility of each parent to consult with the other prior to making any decisions regarding aforementioned major areas of concern.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that effective on Sunday, October 15, 2000, at 6:00 p.m. the primary residence of the parties' minor children shall be in the home of their Father and they shall visit in the home of their Mother every weekend except the first

weekend of each month and all weekends shall commence at 6:00 p.m. on Friday and terminate at 6:00 p.m. on Sunday.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that the holiday schedule in paragraph No. 6(a) through 6(h) inclusive in the Order dated April 17, 1998, is incorporated herein and made part hereof.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that during the normal school vacation period of each year the minor children shall reside with and be in the primary physical custody of their Mother during the first two (2) full weeks of each of the months of June, July and August with each week to commence on Sunday at 6:00 p.m. and terminate at 6:00 p.m. on the following Sunday, and this provision shall control and take precedence over all of the foregoing provisions.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that at all times and under all circumstances Mother and Father shall provide to each other phone numbers at which the children may be contacted by the out-of-custody parent at reasonable

¶ 5 On appeal, Mother presents the following issues for our review:

I. Where primary physical custody of four sisters ages 17, 15, 13 and 10 is at issue whether trial court erred in failure to interview or receive testimony from the four sisters?

II. Whether the trial court accorded inadequate weight to the testimony of Appellant's experts, the testimony of the Appellee's use of physical force and the testimony regarding the strained relationship between Appellee and the oldest child?

III. Whether the trial court's determination of custody in the father was not supported by the evidence, contrary to the weight of the evidence and contrary to the legal principles applicable to such matters?

(Brief for Appellant, at 15.)

■■■■ ¶ 6 Our standard of review of child custody orders is broad:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Kaneski v. Kaneski*, 413 Pa.Super. 173, 604 A.2d 1075, 1077 (1992) (quoting *McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992)).[2] Further, as we have stated many times before, "[t]he paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual,

times and with reasonable frequency and neither Father nor Mother shall restrict the children from making telephone calls to the out-of-custody parent.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that partial custody may be exercised by either parent at any other times which may be mutually agreed upon by both of them.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that transportation of the children to and from each custody exchange shall be the responsibility of the parent who is to receive custody.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that the parents shall at all times act for the best interests and welfare of the children and each shall exert every effort to enhance the affection of each child for the other parent and neither parent shall do or say anything to or in the presence of the children which in any way demeans or degrades the other parent in the eyes of the child.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that neither parent shall permit any third party to do or say anything to or in the presence of the children which would in any way demean or degrade the other parent in the eyes of the children.

**IT IS FURTHER ORDERED, DIRECTED AND DECREED** that jurisdiction over the children in this matter shall remain with the Court of Common Pleas of Blair County, Pennsylvania unless and until further Order be entered by this Court.

(Trial Court Order, 10/3/00.)

2. Our Supreme Court has made it clear that "gross abuse of discretion" and "abuse of discretion" are synonymous standards. *See Moore v. Moore*, 535 Pa. 18, 28 n. 4, 634 A.2d 163, 168 n. 4 (1993).

moral and spiritual well-being." *Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264, 265 (1997) (citation omitted).

¶ 7 In her first issue, Mother asserts the trial court erred in failing to interview or hear testimony from the four daughters. Father argues, as an initial matter, that her argument has been waived because Mother did not formally request the trial court to hear testimony from the children. By contrast, Mother asserts, both in her brief to this Court and in her motion for reconsideration, that she did make such a request. She has not, however, identified where in the record this request was made.

¶ 8 Nevertheless, the record is clear that counsel for both parties understood that the trial court was considering the issue of possible input from the children and would decide by the end of the hearing whether it concluded interviews or testimony from the children was necessary.[3] (N.T. Hearing, 4/25/00, at 440–41.) Further, in her motion for reconsideration of the trial court's order, Mother did raise as an issue the court's failure to hear from the children. Finally, where a child's best interests are at stake, we are reluctant to find waiver in child custody cases. *See Moore v. Moore*, 535 Pa. 18, 25, 634 A.2d 163, 166–67 (1993) (noting that post-trial motions are not required in custody cases as "the concept of waiver would be inappropriate in a case where the welfare of the child is the ultimate concern of the Court"); *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988) (same); *cf. Gephart v. Gephart*, 764 A.2d 613 (Pa.Super.2000) (in support action, reliance on waiver inappro-priate to avoid properly evaluating spouse's earning capacity). As a result, we find the issue is properly before us and shall address the merits of Mother's argument that the trial court erred in failing to interview or take testimony from the daughters.

¶ 9 At the custody hearing, the court heard the testimony of Mother and Father and, in addition, Mother presented the testimony of her brother, the social worker who was involved in custody evaluations prior to the 1998 orders, and the psychologist who had counseled Caitlin, Rachel, and Brooke. Although the social worker and the psychologist testified as to their conclusions regarding the best interests of the children and their views of the children's custodial preferences, as we have noted, the trial court never directly interviewed or heard testimony from the four children.

¶ 10 The trial court concluded, and all parties agree, that the previous custody arrangements had become unworkable:

It is difficult to believe that any rational person could conclude that the terms of the controlling Orders would serve the best interests of any of the children. One or more of them is in transit from one parent's home to that of the other nearly constantly. Numerous descriptions provided during the hearing regarding exchanges of custody and the accompanying transfers of the girls' clothing items, school paraphernalia and sports equipment left this Court with the perception of the frenzied antics of a "whirling dervish". One need be neither a child psychologist nor an expert in

---

**3.** When the matter was discussed as a scheduling issue, the trial court, responding to a request that all other testimony be completed first, stated:

Most assuredly, but I don't want to leave anybody with any misapprehensions here. I'm not one hundred percent certain that I'm going to do that. As I said, I'm not committing one way or the other, but most certainly, if there were to be an interview of a child, it wouldn't be until all of our courtroom business testimonially has been completed.

(N.T. Hearing, 4/25/00, at 441.)

social relationships to know that such an arrangement will take a toll on both the parents and the children.

(Trial Court Opinion, 10/3/00, at 5.) In its effort to devise a more streamlined arrangement, the trial court took great pains to express its conclusion that both parents were equally loving and capable:

There is absolutely no doubt in the mind of this Court that both Father and Mother deeply love their daughters and that much of their personal lives centers upon the girls. There is also no doubt that each parent wants only the best for the children and that throughout the history of the matter each has done what each believed to be for the benefit of their daughters.

It is abundantly clear that while Father and Mother are equally capable parents they differ drastically in their views on the extent to which their daughters should engage in extra-curricular activities, particularly athletics, and whether all other of their activities should be relegated to secondary position for the sake of their athletic success. There is little likelihood that any decision rendered by this or any other Court will change the thinking of either parent on that subject. We are certain that so long as any of the children remain unemancipated the parents' difference of opinion in this regard will continue to be an obstacle to any meaningful agreement between them about much of anything regarding their children.

During her testimony Mother demonstrated to this Court an exhaustion of spirit for continuing with the struggle over the custody of the girls. It was readily apparent that her recognition of the difficulty which each girl is experiencing in the present custody arrangement coupled with her maternal love for them has led her to take the position that even if it means that she has less physical custody, she wants the Court to end the nightmare of the present system. The Court can only offer admiration for such an attitude of selflessness for the sake of the children.

Father, on the other hand, insists that he and his present wife are fully capable of assuming primary physical/residential custody of all four (4) girls. This is so in spite of an on-going antagonism which exists between him and daughter Rachel as the result of their disagreement about many things including but by no means limited to her use of the telephone and E-mail and the style of Father's discipline which differs substantially from that of Mother. His sincerity in this regard is not open to question even though it appears that he may be overly optimistic.

(Trial Court Opinion, 10/3/00, at 5–7.)

¶ 11 It is clear that the trial court struggled to make a decision in the face of two capable and loving parents. Under these particular circumstances, however, and given the ages of these children, we believe the court should have based its decision on as complete a record as possible. For that reason, we agree with Mother that it was an abuse of discretion for the trial court not to interview or take testimony from the children.

¶ 12 As this Court has stated: "It is important to note that while the express wishes of a child are not controlling in a custody decision, those wishes do *constitute an important factor that must be carefully considered* in determining the child's best interests." *Myers v. DiDomenico*, 441 Pa.Super. 341, 657 A.2d 956, 958 (1995) (citing *McMillen v. McMillen*, 529 Pa. 198, 203, 602 A.2d 845, 847 (1992)) (emphasis added); *Cardamone v. Elshoff*, 442 Pa.Super. 263, 659 A.2d 575, 583 (1995) (same). While a child's preference for one parent must be based on good reasons and the child's maturity and intelligence must be taken into account, *Myers*, 657 A.2d at

958, our Supreme Court concluded in *McMillen v. McMillen, supra,* that, where the households of both parents were equally suitable, a child's preference to live with one parent "could not but tip the evidentiary scale in favor" of that parent. *McMillen,* 529 Pa. at 204, 602 A.2d at 848.

¶ 13 In that regard, there are indications that some of the children's custodial preferences might have been at odds with the court's order. While Rachel and Father have had a fractured relationship in recent years, and while Brittany had in the past desired to live with Father, at oral argument, counsel for the parties conceded that Brittany and Rachel were refusing to abide by the terms of the trial court's custody order that requires them to reside with Father.

¶ 14 Given the trial court's conclusion in this case that both parents were equally loving and capable, we conclude that the custodial preferences of the children may "tip the evidentiary scale" in favor of one parent or the other. We therefore hold that the learned trial court abused its discretion by concluding that interviews with or testimony from the children was unnecessary. As a result, we vacate the October 3, 2000 Order and remand this matter for an evidentiary hearing so that the trial court may consider the express preferences of the children, with due regard to each child's reasons, level of maturity, and intelligence.[4]

¶ 15 Order vacated and case remanded for proceedings consistent with this Opinion.

¶ 16 Jurisdiction relinquished.

---

4. Given our resolution of this issue, we need not address Mother's remaining issues on appeal.