## Meyer v. Meyer

*Angelo A. Papa,* for plaintiff.
*Jonathan R. Miller,* for defendant.
*E. Brandt Bythrow,* for minor child.

PICCIONE, *J.,* January 15, 2010—Before the court for disposition is the complaint for custody filed by Edward J. Meyer, the plaintiff (Father) against Patricia J. Meyer, the defendant (Mother). On June 17, 2008, Father filed the complaint seeking custody of the parties' two minor children, [   ] born July 22, 1991 and [   ] born April 26, 1997. Subsequent to the filing of the complaint,

[   ] has reached her maturity and is no longer a subject of these custody proceedings.

The parties were married on June 22, 1990, resided in Lawrence County, Pennsylvania and separated on June 13, 2008. Subsequently, Mother remarried on October 23, 2009 to James Smith. Father testified he is presently not married nor in any relationship.

Mother and her current husband reside in Lawrence County in the Wilmington Area School District in a three-bedroom, two-bathroom home, which sits on a one and one-fourth acre lot. Father resides in the Wilmington Area School District in Lawrence County in a two-bedroom, one-bathroom apartment. The apartment is rented by Father's mother who is currently residing in a nursing home.

The minor child, [   ], is currently in the seventh grade having attended the Wilmington Area School District. Presently, the child is enrolled in cyberschool.

The parties' other child, [   ], resides with Father and is presently attending Penn State University—Shenango Campus and working part-time at Taco Bell. She testified that she has no relationship with Mother.

The court heard testimony from Amy Pidro, guidance counselor of the Wilmington Area School District, who testified that she has had contact with the minor child and did not recommend enrollment of the minor child in cyberschool. The court also considered testimony of James Smith, Mother's present husband, James Meyer, (age 21), Mother's son with Mr. Smith, Sandy Copper, Lawrence County Children and Youth Services Admin-

istrator, Jeff Sunderman, counselor at Clover Psychological Association, Father, Susan Rizzo, the minor child's paternal aunt, and Mother. The court also heard testimony in chambers, with counsel present, from the minor child.

Father works at King's Auto Sales with working hours of 7:30 a.m. until 5 p.m. Monday through Friday, 7:30 a.m. to 8 p.m. on alternate Mondays and one weekend per month on Saturday from 9 a.m. until 1 p.m. Mother is currently unemployed, in good health and has a Social Security case pending due to an injury to her leg. Father describes his health as excellent.

Both parties have attempted to portray the other party as having engaged in conduct that has placed the minor child at risk; however, the court finds that, though both parties may be deficient in some aspect of their parenting skills, both parents do indeed love the minor child.

The court received testimony regarding the parties' marriage. Mother testified that Father was physical with Mother, hit her, belittled her and engaged in name calling. The parties presented a history of protection from abuse filings during their marriage, including a protection from abuse brought by Mother on behalf of the minor child against Father. Sandy Copper, Lawrence County Children and Youth Services, testified that she knows Mother and testified as to an incident on or about November 2008 where she was contacted by the Northwest Regional Police Department regarding problems Mother was experiencing because of the child's visit with Father. She reported that Mother was upset because at

the weekend visit, the children had gotten into a fight over socks and the minor child was hit. The child reportedly stated that Mother told her that Father did not love her and was only taking her because he did not want to pay child support. Ms. Copper further testified that Mother became boisterous with her when confronted with this information.

The court also heard testimony from Jeff Sunderman, counselor with Clover Psychological Association, and from James Smith, Mother's current husband. The court concludes from this testimony that so long as James Smith abides by the recommendations of Clover Psychological Association and the terms and provisions of the residential contract and expectations signed by Mother and James Smith on December 8, 2008, are adhered to, James Smith does not pose an exceptional risk to the health and safety of the minor child.

Mother testified that Father has had in the past and currently continues to have a problem with alcohol. Father has two prior driving under the influence violations, but denies any current alcohol consumption. Father further denies use of any non-prescriptive drugs or controlled substances.

The minor child testified in chambers before the court with all counsel present. The court finds the child to be alert, coherent and aware of her surroundings and situation. The court also believes that the child has been negatively impacted by the conduct of her parents toward one another and within the family relationships. Specifically, it was difficult for the child to maintain focus,

and was restless when answering the court's questions about her schooling. The child was somewhat evasive and unclear regarding cyberschool. However, her remarks about attendance at public school seemed to focus more on difficulties that she was having with another student that had not been appropriately handled by Mother. During in-court testimony, questions were raised about the child's cleanliness, body odor, her rash and scalp condition. The court observed what appeared to be a generally healthy child who exhibited evidence of psoriasis or eczema. The court would note that both parties have been aware of this condition as it seems to have predated their separation. Though the child has been to one dermatologist, Mother testified that she is getting around to taking the child to another dermatologist and Father seems content in just allowing Mother to handle this situation and to complain about it when he perceives the opportunity to do so may benefit him. The court heard no testimony from either of the parties that the parties are conscientiously handling the minor child's skin condition. The court further finds that the parties have inadequately attempted to establish communications between themselves regarding the minor child.

Throughout the proceedings, the court observed Mother engaging in conduct in the nature of her body language, her facial expressions and her responses wherein she was more interested in attempting to "score points" against Father as opposed to recognizing the impact upon the minor child. The court is particularly concerned with Mother's decision-making process concerning and impacting the minor child. In particular, the

unilateral decision to place the child in cyberschool. It appears to the court that this decision was made without the direction of the Wilmington Area School District guidance counselor and without the knowledge of Father. Further, it appears it was Mother's solution to resolve a difficulty the child was having with another child, rather than seeking assistance from the appropriate school personnel to address the problem in school. As a result, the court believes this child is already behind in her social and academic development. The court has no doubt that Mother and child are good friends, but what the court is not so sure of is that Mother is aware of the child's needs, and the guidance, direction, appropriate disciplining and structure the child requires as the, child progresses to adulthood.

The paramount consideration in a custody determination is the best interest of the children. *Moore v. Moore,* 535 Pa. 256, 634 A.2d 163 (1993). Custody can be changed without proof of a substantial change in circumstances when it is in the best interest of the child. *Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988). To determine the best interest of the child, a court should consider all factors that would legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Swope v. Swope,* 455 Pa. Super. 587, 689 A.2d 264, 265 (1997).

In child custody cases, the determination of the best interests of the child encompassed consideration of the physical, emotional, intellectual and spiritual well-being of the child. In a custody case between fit parents, the test of the best interests of the child is initially weighed

equally as to each parent and the parent will prevail when the weight of the evidence shifts even slightly in his or her favor. The parent's ability to care for a child must be determined at the time of the custody hearing, not as of an earlier time. *Wiseman v. Wall,* 718 A.2d 844 (Pa. Super. 1998).

In this case, the court finds that Father offers the best opportunity for the parenting, lifestyle and decision-making process that are necessary to afford the minor child the greatest opportunity to develop appropriately; socially, mentally and intellectually. Mother changed the child's schooling circumstances rather than discuss the issue with the school authorities or Father; Mother sought to institute protection from abuse actions against Father rather than open up and discuss the problems with Father; and Mother called the police on her other daughter because of what the court views as a minor spat between the two of them. In all of these circumstances, Mother should have conducted herself more maturely and appropriately. It appears that Mother's resolution to the issues is clouded by an inappropriate desire to "get" Father or the other daughter to cause a negative effect upon the individuals involved.

Father is not blemish free. The court is not convinced that he has overcome his drinking problems. More so, the court is concerned about the residence of Father to the extent that if primary physical custody is awarded to Father, the minor child and the other daughter shall each have appropriate living conditions for them at Father's residence.

However, in weighing the relative merits and the strengths and weaknesses of each parent, the court concludes that Father should be awarded primary physical custody of the minor child. The court believes such to be in the best interest of the child and will provide for greater continuity and stability in the life of the child. Therefore, the court will enter a separate order in accordance with this opinion.

## ORDER

And now, January 15, 2010, following a custody trial on November 17, 2009, with the parties appearing with counsel, the plaintiff (Father) being represented by Angelo A. Papa, Esquire, and the defendant (Mother) being represented by Jonathan R. Miller, Esquire, and the minor child being represent by E. Brandt Bythrow, Esquire, and in accordance with the accompanying opinion of even date herewith, it is ordered, adjudged and decreed as follows:

(1) Primary physical custody of the parties' minor child, [    ], born April 26, 1997, is hereby awarded to Father; subject to the partial rights of Mother as hereinafter set forth.

(2) Father and Mother shall have shared legal custody of the minor child and shall execute any and all documents or releases necessary to effectuate legal custody, including but not restricted to, authorizations and/or releases for school reports, medical reports, insurance documents and documents required by state, local or federal authorities. Except in cases of medical emergencies, the custodial parent will consult with the non-cus-

todial parent with regard to the medical, dental and psychiatric care and treatment of the child. Both parties shall have the rights to review the medical, dental and psychiatric records of the child, the results of psychological tests and the school records of the child. Also the custodial parent is responsible for the academic performance of the child and the child's participation in normal extracurricular activities.

(3) Mother shall have partial custody with the minor child as follows:

(a) Alternate weekends from Friday after school until the following Sunday at 7 p.m.

(b) Each Wednesday after school (or 4 p.m. during non-school periods) until 7 p.m.

(4) The parties shall share equally the following holidays: New Year's Day, Easter, Memorial Day, Fourth of July, Labor Day, Thanksgiving, Christmas Eve, Christmas Day and the minor child's birthday. During even-numbered years, Mother shall have custody of the minor child from 9 a.m. until 3 p.m. and Father shall have custody of the minor child from 3 p.m. until 9 p.m. During odd-numbered years, this schedule shall alternate with Father having custody with the minor child from 9 a.m. until 3 p.m. and Mother having custody with the minor child from 3 p.m. until 9 p.m. In the alternative, if the parties agree, then the parties may alternate the holidays wherein each party would have the minor child for the full holiday day.

(5) Father shall have custody of the minor child every Father's Day from 9 a.m. until 8 p.m. and Mother shall

have custody of the minor child every Mother's Day from 9 a.m. until 8 p.m.

(6) All holidays or other special periods of partial custody shall supersede the regularly scheduled periods of custody.

(7) Mother shall be entitled to two non-consecutive weeks of summer vacation with the minor child. Mother shall notify Father in writing by May 15 of each year as to which two non-consecutive weeks she will be exercising her rights of partial custody.

(8) The parties are extended the privilege by the court upon their mutual agreement to modify the terms of the above-stated custody provisions from time to time as they shall agree are in the best interests of the child.

(9) Father shall:

(a) Consider the re-enrollment of the minor child if such has not yet occurred, in the Wilmington Area School District for the second semester of the 2009-2010 school year;

(b) Within 10 days of the date of this order, arrange to have appropriate sleeping arrangements finalized for the minor child and her older sister at his residence. Lawrence County Children and Youth Services (LCCYS), located at 1001 E. Washington Street, New Castle, Pennsylvania 16101, telephone no. (724) 658-2558, shall conduct a home-study evaluation of Father and child's residence after 30 days from the date of this order. LCCYS shall prepare and submit a report thereof to the court with a copy to counsel of record and said counsel is directed not to share the report with their respective

client. Father shall be responsible for the payment of his cost prior to the date of the evaluation as assessed by LCCYS. Father is further directed to fully cooperate with LCCYS in connection with completing the home study;

(c) Review with the child's pediatrician, the current medical condition and needs of the child and make immediate appropriate arrangements to address all such needs; and

(d) Evaluate the role alcohol consumption plays in his life and whether or not any remedial steps need be taken in view of his designation as primary physical custodian of the minor child. In any event, Father shall not consume alcohol within two hours of any time he is to engage in transporting the child.

(10) In any transporting of the minor child, all parties and anyone else involved with such transportation, shall comply with the laws and regulations of the Commonwealth of Pennsylvania including those regarding child safety restraint apparatus in any vehicle used to transport the child.

(11) Both parties shall be entitled to daily telephonic contact with the child while the child is in the custody of the other parent.

(12) No party shall remove the minor child from the jurisdiction of this court with the intent of changing the physical residence of the minor child without the written consent of the other party or the court.

(13) The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and

all other orders in connection with this matter. Failure to do so may result in sanctions being imposed by the court upon the offending party including suspension of custody and payment of attorney's fees.

(14) While in the presence of the child, neither Father nor Mother shall make any remarks or do anything which can in any way be construed as derogatory or uncomplimentary to the other, and it shall be the duty of each parent to uphold the other parent as one whom the child should respect and love.

(15) The parties shall read and fully comply with the provisions of the appendix to custody order which is attached hereto [not published herein] and filed with this order.

(16) The prothonotary shall serve notice of this order by regular mail or personal service upon counsel of record; upon Sandy Copper at Lawrence County Children and Youth Services, 1001 E. Washington Street, New Castle, Pennsylvania 16101; and upon Jeff Sunderman at Clover Psychological Association, 3030 Wilmington Road, New Castle, Pennsylvania 16105.