J-S05043-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| D.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| A.R.D. | : | |
| | : | |
| Appellant | : | No. 1552 WDA 2018 |

Appeal from the Order Entered September 28, 2018
in the Court of Common Pleas of Blair County
Domestic Relations at No(s): 4712 GN 2005

BEFORE: PANELLA, P.J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J. FILED APRIL 08, 2019

A.R.D. (Mother) appeals from the order entered September 28, 2018, in the Court of Common Pleas of Blair County, which reinstated a prior child custody order entered January 20, 2017. The prior order awarded primary physical custody of her son, S.D.D. (Child), born in August 2003, to D.D. (Father) during the school year. The order also awarded primary physical custody of Child to Mother during his summer break from school and awarded shared legal custody to both parties. Upon review, we affirm.

Mother and Father are former spouses, who separated in approximately 2005 and divorced in 2007. They had two children during the marriage: Child and his adult brother, S.T.D. In 2012, Mother married S.R. (Stepfather). Prior to the instant proceedings, the parties exercised custody of Child pursuant to an order entered January 15, 2015, which granted Mother's request to relocate to Florida and awarded her primary physical custody of Child during

_____
* Retired Senior Judge assigned to the Superior Court.

the school year. The order awarded partial physical custody to Father for one weekend each month. In addition, the order awarded partial physical custody to Father every time Child had four or more consecutive days off from school and every time Child traveled to Blair County. The order awarded shared legal custody to the parties.

Father filed a petition to modify custody on April 13, 2016, in which he requested primary physical custody of Child during the school year. Therein, he averred that Child had not adjusted well to residing in Florida and wanted to return to Pennsylvania. The court[1] conducted a hearing on November 29, 2016, during which it first heard testimony from Father. Father testified that he was pursuing primary physical custody "because [Child] tells me he wants to be happy. It's not between [Mother] or I [sic]; it's for [Child's] happiness." N.T., 11/29/2016, at 14. Father acknowledged that he had encouraged Child to express his unhappiness to Mother and to Child's therapist. Id. at 12. Father also complained that Mother had failed to involve him in, or keep him informed of, the important events in Child's life. For example, he testified that Mother enrolled Child in a new school and began taking Child to a therapist without discussing the matter with him first. Id. at 11.

Of particular relevance to this appeal, Mother's counsel cross-examined Father extensively about a series of text messages that he exchanged with

_____

[1] For reasons that will become clear infra, we note that the Honorable Daniel J. Milliron presided over the prior custody proceedings and entered the January 15, 2015 order. The Honorable Elizabeth A. Doyle presided over the November 29, 2016 hearing and the proceedings that followed.

Child. In one such message, Father encouraged Child to tell his therapist that he wanted to return to Pennsylvania. Id. at 28. Father insisted that he made these statements because he "just wanted [Child] to express himself." Id. In another message, Father stated to Child that he would "go to pre-trial Friday. That's where they give you a trial date. I might end up in jail because if it isn't soon, I'm going to go nuts." Id. at 31. Father explained that this statement was merely a joke and that Child responded "Ha-ha" before the two of them began discussing baseball. Id. at 31, 58. Finally, Counsel questioned Father about a message he sent encouraging Child to "hang in there and stay strong." Id. at 32. Counsel suggested that Father made the statement to imply to Child that "Florida is so terrible that you need to hang in there[.]" Id. Father denied this, stating that he merely intended his statement to be "a goodbye or see you later." Id. at 33.

The trial court next heard testimony from Mother. Mother testified that Child has a number of friends in Florida and that he is doing well academically. Id. at 73-78. However, she acknowledged that Child is unhappy when he returns to Florida from Pennsylvania. She stated, "when he comes back ... he's very distraught ... [B]ut then once we get back into our life there and school activities, he's back to normal." Id. at 95. Mother explained that the situation "makes me very sad because ... he's blaming me for his happiness because I'm not changing my mind on where he should be." Id. at 99. She insisted that it would serve Child's best interest to remain in her primary physical custody during the school year "[j]ust for his everyday day-to-day

activities, you know, a two parent household, you know, we share duties, academics. I'm really concerned with that one." Id. Significantly, Mother conceded that she had failed to inform Father that she and Child moved into a new residence in Florida "until after we literally moved into the home." Id. at 79. Likewise, she did not inform Father that she would be enrolling Child in therapy until after she had already "[s]et it up." Id. at 111.

Finally, the trial court interviewed Child, who was thirteen at the time of the hearing. Child explained that he dislikes living in Florida because "I don't have much [sic] friends. I don't go outside as much because there's hardly any people around to do stuff with." N.T., 11/29/2016 (Child Interview), at 16. He stated that he prefers Pennsylvania because "I can go outside where there's [sic] more outside activities, more family, more friends." Id. at 17. Child also explained that he does not like Stepfather. Id. at 6. He reported that Stepfather "argues with [Mother]. Then he calls [Mother] names and he really doesn't take me any places, I guess. He bought me fishing rods and then he never took me fishing." Id. at 7. Child stated that Stepfather makes fun of his friend's speech impediment and even makes fun of Father "because he stutters sometimes." Id. at 31. When the trial court asked Child which parent he believed was more involved in his education, Child replied,

> I really --- I think my dad because my mom and [Stepfather], like, I have homework and they really don't help me with it, I guess, because I just do my homework in my room and they kind of --- they really don't go over it and my dad will --- I always did homework with him so he could check over it and stuff.

I d. at 10. Child acknowledged that he last did his homework with Father prior to Mother's relocation to Florida. I d. at 10-11.

On January 20, 2017, the trial court entered an order awarding primary physical custody of Child to Father during the school year.[2] The order awarded Mother partial physical custody every time Child has four or more consecutive days off from school and every time she travels to Blair County. During the summer of 2017, the order awarded physical custody of Child to Mother from July 1, 2017, until August 5, 2017. During the summer of 2018 and following, the order awarded physical custody of Child to Mother from one week after school ends in June until the beginning of the second or third[3] week in August. The order awarded shared legal custody to the parties.

On February 15, 2017, Mother filed an emergency petition for special relief, in which she averred that Child had been untruthful during his interview with the trial court on November 29, 2016. The court treated Mother's petition as a motion for reconsideration, which it granted. A hearing took place on

_____

[2] In its order, the trial court stated that it was awarding Father "residential custody" of Child. Order, 1/20/2017, at 1. We note that "residential custody" is not a permissible custody award pursuant to our child custody statute. See 23 Pa.C.S. § 5323(a) (enumerating the types of custody awards). Therefore, we characterize the court's award as an award of primary physical custody during the school year.

[3] The order appears to contain a typographical error, as it states that Mother "shall have [Child] for June-July, and the first two weeks in August ... and will return [Child] back to Father at the end of the first week in August." Order, 1/20/2017, at 2.

June 22, 2017, during which the court interviewed Child for a second time. Child reported that he was enjoying his time in Pennsylvania. N.T., 6/22/2017 (Child Interview), at 3, 7. He informed the court that he was making more friends in Florida and that his relationship with Stepfather was improving. Id. at 7-8. Nonetheless, he confirmed that he still wanted to attend school in Pennsylvania starting in the fall. Id. at 5. Child also confirmed that he was being honest during his previous interview and that he did not have anything new or different that he wanted to say. Id. at 2. On June 23, 2017, the court entered an order explaining that it would make "no alteration to its previous order" of January 20, 2017. Order, 6/23/2017. Mother timely filed a notice of appeal on July 21, 2017, as well as a concise statement of errors complained of on appeal.

On July 26, 2017, Mother filed an application for stay, in which she requested that the trial court stay its award of primary physical custody to Father during the school year while her appeal remained pending. Mother averred that she was likely to prevail on appeal and that Child should remain with her so that he can continue in his established residential and educational setting. She also averred that the court acted improperly by denying her request to present her own additional testimony during the reconsideration proceeding on June 22, 2017. The court entered an order on July 28, 2017, stating that it was "reopening the record on the Motion for Reconsideration to

schedule testimony of [M]other for 1 hour" but denying all other relief. Order, 7/28/2017.

The trial court heard testimony from Mother via telephone on August 10, 2017. In an effort to refute Child's statements during his interview on November 29, 2016, Mother testified that he has numerous friends in Florida and that she and Stepfather help him with his homework. N.T., 8/10/2017, at 11-12, 15-16. Mother further testified that the court's January 20, 2017 custody order left Child intensely distraught. Id. at 9. She stated that Child "basically cried all night" after learning of the order and refused to speak to Father for three days. Id. Thereafter, on August 14, 2017, the court entered an opinion and order denying Mother's petition for special relief.[4] The court entered a separate opinion and order on the same day discussing the custody relocation factors set forth at 23 Pa.C.S. § 5337(h). The court analyzed the factors in response to Mother's July 21, 2017 concise statement, and her July 26, 2017 application for stay, in which she averred that the court erred by failing to do so before entering its order of January 20, 2017. Mother filed an additional notice of appeal and concise statement of errors complained of on appeal on August 23, 2017.

_____

[4] The trial court stated on the record that it denied the application for stay. N.T., 8/10/2017, at 1, 21.

- 7 -

While both of Mother's appeals remained pending, she filed a petition for special relief on December 1, 2017, in which she averred that Child's school performance was beginning to deteriorate.[5] In response, Father filed a motion to quash/motion for sanctions on December 4, 2017, in which he argued that the trial court lacked jurisdiction to grant special relief due to Mother's appeals and requested reimbursement of his counsel fees. On December 8, 2017, the court entered an order canceling the hearing it had scheduled on Mother's petition, but it did not address Father's request for counsel fees.

On January 4, 2018, a prior panel of this Court vacated the trial court's January 20, 2017 order, due to the court's failure to analyze the subsection 5337(h) relocation factors. D.D. v. A.R.(D.), 183 A.3d 1036 (Pa. Super. 2018) (unpublished memorandum at 1, 7-8). The panel explained that it was necessary for the court to consider the relevant 5337(h) factors, even though neither parent was requesting relocation, because Child stood to move a long distance. Id. (unpublished memorandum at 7). The panel acknowledged that the court had already considered the factors in its opinion of August 14, 2017, but concluded that the court's analysis was not sufficient because it failed to conduct the analysis at or near the time it issued its decision. Id. (unpublished memorandum at 7 n.8). The panel quashed Mother's appeal from the order

_____

[5] Per the trial court's January 20, 2017 order, Father was awarded primary custody of Child beginning on August 5, 2017. Child arrived and began residing with Father on August 6, 2017 and shortly thereafter, began attending school in Pennsylvania.

entered August 14, 2017, reasoning that the trial court lacked jurisdiction to enter the order, rendering it a legal nullity. Id. (unpublished memorandum at 2, 5-6).

Subsequently, on January 22, 2018, the trial court entered an opinion and order discussing the subsection 5337(h) relocation factors and the best interest factors set forth at 23 Pa.C.S. § 5328(a). The court issued another opinion and order discussing the factors on February 21, 2018, stating that it entered its previous opinion and order in error because it did not receive the record on remand until February 15, 2018. Mother filed a notice of appeal and concise statement of errors complained of on appeal on March 19, 2018. On March 26, 2018, this Court received a letter from the trial court, indicating that it had failed inadvertently to discuss the custody relocation factor set forth at subsection 5337(h)(5) and requesting that this Court remand the matter so that it could conduct its analysis. On April 18, 2018, this Court entered an order vacating the trial court's opinion and order of February 21, 2018, and remanding the case.

Finally, on August 27, 2018, the trial court issued an opinion discussing subsection 5337(h)(5), followed by an opinion addressing all of the relocation factors and the subsection 5328(a) factors together on September 14, 2018. In an order entered on September 28, 2018, the court indicated that it had reconsidered the matter in light of subsection 5337(h)(5), and that it would serve Child's best interests to reinstate the order of January 20, 2017 granting

Father primary custody of Child. The court issued an opinion in support of its order, in which it once again discussed the subsection 5337(h) and subsection 5328(a) factors. Mother timely filed a notice of appeal on October 26, 2018, along with a concise statement of errors complained of on appeal.

On appeal, Mother presents several issues for our review, all of which involve the trial court's consideration of the custody and relocation factors, as well as the court's ultimate finding that Father should have primary custody of Child during the school year. We review Mother's claims in accordance with our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

When a trial court makes an award of custody, the best interest of the child is paramount. S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014). The factors that a court must consider when awarding custody are set forth at subsection 5328(a):

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Further, our custody statute sets forth the subsection 5337(h) relocation factors as follows.

(h) Relocation factors.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Instantly, in its opinion of September 28, 2018, the trial court provided a thorough analysis of both the subsection 5328(a) and 5337(h) factors.[6] In

_____

[6] The trial court did not analyze separately subsection 5328(a)(2.1). However, the parties presented no evidence relevant to that factor during the hearing.

its analysis, the court emphasized Child's positive relationship with Father and with his adult brother, S.T.D., who continues to reside with Father, and noted that Child has more extended family and more friends in Pennsylvania than in Florida. Trial Court Opinion, 9/28/2018, at 3-6, 11-13, 15-16, 18-20, 24-25. The court also noted Child's belief that Father is more involved in his education than Mother, because Father helped Child with his homework and Mother does not. Id. at 4, 13, 15, 18, 22-23. The court expressed concern that Child has a strained relationship with Stepfather and experiences frequent arguments between Stepfather and Mother. Id. at 4-5, 11-13, 17, 20-22, 25. The court also found credible Father's testimony that he has not attempted to interfere with Child's relationship with Mother since her relocation and that Mother has failed to keep him informed of the important events in Child's life. Id. at 8-10, 14, 25. The court stressed Child's preference to return to Pennsylvania, which it characterized as strong and mature. Id. at 7, 13, 16, 22-23, 25-26. While the court stated that it placed "heavy weight" on Child's preference, it clarified that it based its decision on all of the statutory factors and the totality of the evidence. Id. at 13, 26.

We address Mother's seven[7] claims on appeal together, as they are interrelated and often duplicative of each other. In her first and second claims, which she combines in her brief, Mother argues that the trial court's findings

_____

[7] Mother includes an eighth issue in her statement of questions involved, but indicates that she is withdrawing the issue on appeal. Mother's Brief at 7.

- 14 -

with respect to the subsection 5337(h) relocation factors were not supported by the record, and that the record did not support "any change from the conclusions drawn by the Honorable Daniel J. Milliron in the January 9, 2015, Opinion …." Mother's Brief at 16-32. In essence, Mother argues that the court should have weighed the evidence in this case differently and reached conclusions more favorable to her. She argues that Child dislikes Florida because of Father's negative influence and directs our attention to his text messages with Child, as discussed above. Id. at 26-29. She also stresses Child's educational needs, arguing that she has been more involved in Child's schooling than Father. Id. at 22-26, 31. She maintains that the court was bound by Judge Milliron's decision entered two years earlier, because Judge Milliron focused primarily on Mother's superior involvement in Child's education and "[n]othing has changed in that regard." Id.

In her third claim, Mother argues that the trial court erred by granting primary physical custody to Father during the school year because Child was doing well in Florida and the court "failed to cite any evidence on the very real possibility of a detrimental effect of taking [Child] out of his community while he was doing so well." Id. at 32-33. Similarly, in her fourth claim, Mother argues that Father failed to meet his burden of proving that Child's "relocation" would be in Child's best interest pursuant to subsection 5337(i)(1). Id. at 33-34.

In Mother's fifth and sixth claims, which she once again combines in her brief, she argues that the trial court's findings with respect to the subsection 5328(a) best interest factors were not supported by the record, and that "the record did not show any change from the record at the proceeding" before Judge Milliron. Id. at 34-56. Mother repeats her previous arguments that Father is the source of Child's dislike for Florida, that the court should have awarded primary physical custody to her during the school year because of her superior involvement in Child's education, and that the court was unable to deviate from Judge Milliron's order entered two years earlier. Id. at 42-56. Finally, in her seventh claim, Mother argues that the court erred by giving determinative weight to Child's preference. Id. at 56-64. She asserts that the court should have placed less weight on Child's preference and focused instead on her superior involvement in Child's education, among other things. Id. at 60-64.

After review of the record, we conclude that Mother's claims do not entitle her to relief. The record supports the trial court's finding that Child was unhappy living in Florida and preferred Pennsylvania. Child provided a well-reasoned basis for his preference, explaining that he has more extended family and friends in Pennsylvania, and that he disliked living with Stepfather due to Stepfather's contentious relationship with Mother. It was within the court's discretion to accept Father's testimony that he did not attempt to manipulate Child or influence what Child would say during his interview with

the trial court. V.B., 55 A.3d at 1197. It was also within the court's discretion to accept Child's statement that Mother and Stepfather typically did not help him with his homework, while Father had helped him with his homework prior to Mother's and Child's relocation. Id.

While Mother now argues that this Court should reweigh the evidence and make its own factual findings contrary to those of the trial court, we are not at liberty to comply with her request. Our case law is clear that we must defer to the court's findings of fact and weight determinations when the record supports them. Id. Indeed, the amount of weight that a court gives to any one factor in its analysis is almost entirely within its discretion. See M.J.M. v. M.L.G., 63 A.3d 331, 339 (Pa. Super. 2013) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."). Further, we have explained the deference we must extend to trial courts in child custody matters as follows.

> [W]e have consistently held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)). Our deference to the trial court is particularly important in this case, as the court based its decision in part on Child's demeanor at the time of his interview. During the proceedings

on June 22, 2017, the court recalled, "the child's affect was depressed; he appeared to be miserable; he appeared to be -- I was worried about him actually if I returned him to [M]other's house in Florida, I was worried about him harming himself actually." N.T., 6/22/2017, at 7.

With respect to Mother's claim that the trial court remained bound by Judge Milliron's decision from January 2015, we reject this assertion as well. It is well-settled that a change of circumstances is not necessary to support the modification of a custody award. Moore v. Moore, 634 A.2d 163, 169 (Pa. 1993) ("As this Court emphatically stated ... there is no need for either parent to prove that something is wrong with the current custody arrangement, or that some dramatic change has occurred before the court will consider a request to alter the custody arrangement."); but see R.M.G., Jr., v. F.M.G., 986 A.2d 1234, 1239 (Pa. Super. 2009) (quoting Hutchinson v. Hutchinson, 549 A.2d 999, 1001 (Pa. Super. 1988)) ("'Best interest cannot be considered in a vacuum and w[h]ere the circumstances [are] unchanged from those that resulted in the initial custody arrangement, it must be presumed that what was in the child's best interest continues.'").

Even accepting for the sake of argument that Mother is correct and that a change of circumstances was necessary for the trial court to modify custody, the record demonstrates that a change in circumstances did occur in this case. At the time Judge Milliron entered his order in January 2015, Child had never before resided in Florida. It was possible that Child would grow to enjoy living

in Florida and begin thriving in his new community. However, by the time Judge Doyle interviewed Child in November 2016, it was clear that this was not the case. Instead, after living in Florida for nearly two years, Child was unhappy, lonely, and longing to return to Pennsylvania. See Karis v. Karis, 544 A.2d 1328, 1331-32 (Pa. 1988) (stressing the "dynamism of the process of growth and maturity of children, as well as the circumstances of their parents' lives, where the only constant is change" and that custody cases "may require continuing review of the best interest of the child, and demand a degree of flexibility such as would allow the court the discretion to make necessary changes when the best interest[s] of the child require such").

Based on the foregoing, we conclude that the trial court did not abuse its discretion or commit an error of law by reinstating its order of January 20, 2017. Therefore, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/8/2019