# Warso v. Albert

*Larry J. Puntureri* and *Gene G. Dimeo,* for plaintiff.
*Susan M. Papa,* for defendant.

HODGE, *J.,* June 23, 2010—This case is before the court for a hearing on a petition challenging the maternal grandparents' partial custody rights. The factual background in the case can be summarized as follows: John S. Warso and Michelle Lee Albert are the natural parents of the minor child (J.R.A.) in question; J.R.A. was born on March 4, 2005. On November 29, 2007, within two years of the minor child's birth, the paternal grandparents filed a complaint for partial custody. Preceding the grandparents' complaint, the father and mother were engaged in custody litigation, with each party fighting for primary legal custody of J.R.A. On November 29, 2007 an order was issued after a custody conference to consolidate the complaints as 10401 and 11701 of 2007 respectively.

The November 29, 2007 order additionally granted the paternal grandparents shared legal custody of J.R.A. with the natural mother and father. The court held that because both biological parents had significant substance abuse problems throughout the course of their custody litigation, granting the paternal grandparents shared legal custody was in the best interest of the child. The order

specifically provided that the "paternal grandparents shall enjoy legal custody with the natural parents . . . [i]f the natural father ceases to reside with at least one of the paternal grandparents, the paternal grandparents shall have partial custody, two overnights each week.

In 2008 Mother voluntarily enlisted into the United States Military, and left for basic training on June 10 of the same year. Subsequent to her enlistment, Mother presented the court with a consent agreement which proposed a modification to the current custody order. The agreement recommended that the maternal grandparents enjoy partial custody of J.R.A. in place of Mother, pursuant to the outstanding orders of court. None of the parties involved opposed the modification at that time; the court consequently granted Mother's request on June 16, 2008, with all other provisions of the previous orders of court still in effect.

Shortly after the modification was granted, however, all the relationship between all parties involved became increasingly destitute. The natural father and his parents struggled with the natural mother and her parents over custody visits, medical treatments, education, and practically every other aspect of the child's life. As a result both parties failed to maintain communication with the other, each believing they were acting with the best interests of the child. The maternal grandparents, by and through their daughter, petitioned this court to again modify the custody order by allowing the maternal grandparents to intervene and by granting the natural mother primary custody. This court allowed the maternal grandparents to join in the above proceedings as defen-

dants, but provided that Father, Mother and paternal grandparents continue to have legal custody of J.R.A.

Even though the most recent custody order maintained shared legal custody between Father, Mother, and paternal grandparents, maternal grandparents continue to retain the notion that they too have legal custody of J.R.A. Consequently, orders of court have not been obeyed and communication between the parties has deteriorated to practically nothing. While neither party is without fault, this court must make a determination, regarding the most appropriate custody arrangements for the minor child, based on the best interest of the child.

The best interest of the child is determined based upon consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. *Arnold v. Arnold,* 847 A.2d 674, 677 (Pa. Super. 2004). Such consideration must be made on a case by case basis. *Moore v. Moore,* 535 Pa. 18, 634 A.2d 163 (1993). Additionally, the court is justified in making changes to an existing custody order without proof of substantial change in circumstances when it is shown that the modification serves the best interest of the child. *Swope v. Swope,* 455 Pa. Super. 587, 689 A.2d 264 (1997).

While the parties in this action assert that the court should apply the *Gruber* test, established by the court in *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990), to analyze the best interests of the child, this court must point out that the *Gruber* test is more applicable in cases where a "custodial" parent wishes to relocate the child, and not where the parent seeks a modification to

the custody order. See *e.g., Clapper v. Harvey,* 716 A.2d 1271, 1274 (Pa. Super. 1998).

However, the factors outlined in *Gruber* are suitable elements to consider in appropriate cases as part of an overall best interest analysis. Where a modification to a custody order is proposed by either party, a court looks to the physical, intellectual, moral and spiritual well-being, and makes a determination as to how these interests may best be served, *Swope,* 455 Pa. Super. at 591, 689 A.2d at 265.

The paternal grandparents' assertion is that they should maintain shared legal custody of J.R.A. because they have been involved in caring for the child since he was born. They made the effort to step in and intervene during a perilous time in the child's life and have continued to care for him since. It is important to note the significance of a familiar and stable family environment, which has been provided to J.R.A. by paternal grandparents, especially during the school year when a child as young as J.R.A. needs consistent supervision and aid in the completion of homework, school projects, and other educational activities. See *e.g., E.A.L. v. L.J.W.,* 443 Pa. Super. 573, 662 A.2d 1109 (1995). Additionally, Father asserts that he is the best person to care for the child since he lives at home with his parents, has made a better lifestyle for himself, is actively involved in child's education, and would do more to establish communication between himself and Mother.

The maternal grandparents easily establish that they too love and care for J.R.A. Additionally, J.R.A. has a wonderful relationship with his half brother, who he sees while staying at his maternal grandparents residence.

Maternal grandparents, along with Mother, feel that in order to continue to build a relationship between Mother and J.R.A. while she serves this country overseas, they too should be awarded shared legal custody. This court does not take lightly Mother's burden of traveling away from her children and family to serve her country, and fully recognizes the personal strains such a commitment can cause. To maternal grandparents' detriment, however, is the fact that maternal grandmother will not communicate with paternal grandparents, and has even refused to allow Father to participate in school activities during "her time" with J.R.A.

Evidence presented by all parties allows this court to conclude that while Mother is away, maternal grandparents make important decisions regarding J.R.A.'s welfare, on the basis that they are acting on Mother's behalf, and don't communicate these decisions to Father or paternal grandparents. In fact, testimony easily established that maternal grandmother's relationship with the child's natural father is the underlying basis for much of the current litigation.

This court is forced to take into consideration the fact that Mother is deployed out of this country and will continue as such for an indefinite period of time. It is not the practice of this court to make determinations based on the possible occurrence of future circumstances; it can only utilize the present facts to determine what is in the best interest of the child. This court finds that the present circumstances indicate that the natural father is capable and willing to care for the minor child, and that it would be unjustifiable to deny him the opportunity to do so.

In the event that Mother returns home from her current military position, this court will anticipate future petitions for modification to the current order. However, the anticipation of future litigation does not prevent this court from issuing a final order and awarding the natural father and paternal grandparents shared legal custody of J.R.A.[1]

For these reasons, the court ratifies its previous order, and grants Father and paternal grandparents shared legal custody. Mother and maternal grandparents can exercise shared physical custody as maternal grandparents are granted partial physical custody of the minor child. Maternal grandparents shall have custody of J.R.A. on the first, third and fourth weekends of every month, with parties additionally rotating visitations on a weekly basis during the summer months. The court feels that this visitation time is appropriate and necessary in order to continue to establish a good relationship with maternal grandparents, and give J.R.A. the opportunity to continue to spend time with his half brother.

## ORDER

And now, June 23, 2010, these cases being before the court for a custody hearing on June 16, 2010 with Attorney Larry Puntureri appearing on behalf of John S. Warso; Attorney Susan M. Papa appearing on behalf of Michele Lee Albert, John Albert and Rosemary Albert; and Attorney Gene Dimeo appearing on behalf of John A. Warso and Mary Lou Warso, and with the parties not

---

1. In *Parker v. MacDonald,* 344 Pa. Super. 552, 496 A.2d 1244 (1985), the Superior Court determined that anticipation of future litigation does not prevent a court from issuing a final order.

having reached an agreement; it is hereby ordered, adjudged and decreed that:

(1) The Father and the paternal grandparents shall have shared legal custody of the minor child, Joseph Albert born March 4, 2005. All parties shall execute any and all documents or releases necessary to effectuate legal custody, including but not restricted to, authorizations and/or releases for school reports, medical reports, insurance documents and documents required by state, local or federal authorities.

(2) During the school year maternal grandparents shall have partial custody of the minor child on the first, third and fourth weekend from Friday at 5 p.m. until Sunday at 5 p.m.

(3) During the summer, parties shall rotate a schedule of one week on and one week off custody of the minor child.

(4) In any transporting of the minor child, all parties and anyone involved with such transportation shall comply with the laws and regulations of the Commonwealth of Pennsylvania including those regarding child safety restraint apparatus in any vehicle used to transport the child.

(5) The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and all other orders in connection with this matter. Failure to do so may result in sanctions being imposed by the court upon the offending party including suspension of custody and payment of attorney's fees.

(6) No party shall remove the minor child from the jurisdiction of this court with the intent of changing the

physical residence of the minor child without written consent of the other party or the court.

(7) The parties shall read and fully comply with the provisions of the appendix to custody order which is attached hereto and filed with this order.

(8) The prothonotary shall properly serve notice of this order and opinion by regular mail or personal service upon counsel of record and any party not represented by counsel at their last known address.

---

## APPENDIX TO CUSTODY ORDER

Certain rules of conduct generally applicable in custody matters are set forth below and are binding on all parties. The breach of any rule may subject the breaching party to contempt of court proceedings or form a basis to modify the custody order. If these general rules conflict with any specific provision of the custody order, the order shall prevail.

*Rule 1.* The custody or visitation provisions of the foregoing custody order are to be considered as the minimum requirements. However, the parties are free to expand the provisions by mutual agreement. No party can unilaterally, *i.e.,* as he or she pleases, increase or decrease periods of custody or visitation.

*Rule 2.* The parties shall not undertake or permit the influencing of the mind of the child(ren) against any party. Any communication or statement which is in any manner derogatory to the other party, obscene, or profane shall not be made to or in the presence of the child(ren).

*Rule 3.* The parties shall not argue or engage in heated discussion in the presence of the child(ren) or when the parties are exercising their communication rights with the child(ren).

*Rule 4.* The parties shall not question the child(ren) as to the personal behavior of the other party, except as necessary to insure the personal safety and welfare of the child(ren). No child shall be used as an informant or carrier of tales to either party.

*Rule 5.* The parties may not make extravagant promises to the child(ren) for the purpose of influencing the child(ren)'s loyalty at the expense of the other party. Any promise made to the child(ren) by either party should be made only with the full intention of expectation of fulfilling the promise.

*Rule 6.* The parties should always consider the child(ren)'s best interest and should act accordingly. A child involved in a custody dispute needs positive assurance from his or her parents that he or she is loved and that it is not his or her fault that any differences exist between the parents.

*Rule 7.* The parties are reminded that children learn from what they see or experience at the hands of their parents or other relatives. If children are to be taught proper moral, spiritual and ethical conduct, it cannot be effectively accomplished if the parties themselves indulge in questionable conduct.

*Rule 8.* When exercising custody or visitation rights with the child(ren), the parties must assure that the child(ren) continue(s) to attend school, church and other

activities considered beneficial to the child(ren)'s overall growth and development.

*Rule 9.* Custody or visitation rights should be exercised on a regular, reasonable and acceptable basis. If it is impossible to exercise a period of custody or visitation, the other party should be immediately notified so that the disappointment or anxiety to the child(ren) that would result from a failed visit is reduced.

*Rule 10.* The party who has physical custody of the child(ren) should encourage, prepare and have the child(ren) available at the designated times and places so that partial custody or visitations occur smoothly.

Likewise, the party exercising partial custody or visitation rights should encourage, prepare and return the child(ren) promptly at the designated times and places.

*Rule 11.* If occasions arise with either party which cause conflicts with the custody or visitation schedule, the parties should be flexible and agree upon make-up time.

*Rule 12.* A party or the person responsible for transporting the child(ren) from and to the custodial residence must refrain from the use of alcohol and possess a valid driver's license with current operating privileges. Any party or designee who arrives to pick up the child(ren) and has used alcohol excessively, is intoxicated or does not possess a valid driver's license automatically forfeits that custody or visitation period. Any party or designee who returns the child(ren) and has been drinking alcohol beverages excessively, is intoxicated or does not possess a valid driver's license automatically forfeits the next

scheduled custody or visitation period. Chronic violations of this rule may result in a suspension of custody or visitation.

*Rule 13.* Each party must notify the other party if any emergency or illness requiring a physician's attention should occur to the child(ren) while in their physical custody.

*Rule 14.* Each party should encourage telephone and other communication between the child(ren) and the other party. Telephone calls should occur at reasonable intervals and reasonable hours such as between 5:30 p.m. and 8:30 p.m. except for emergencies.

*Rule 15.* The party who has physical custody of the child(ren) must exercise the daily parental responsibilities. However, unless otherwise ordered, both parents should consult with one another on major decisions affecting the child(ren) such as education, religious training and medical treatment.

*Rule 16.* Each party must notify the other party of any change in their residence or phone number within 72 hours after any such change.

*Rule 17.* The parties are prohibited from placing or displaying identifying information as to any minor child(ren), or photograph of any child(ren) on any website, internet dating site, internet informational site, or any other internet hosting site, which may be viewed by the public at large. This rule does not prohibit a party utilizing internet service for transmitting photographs to any email or other information by way of the internet to known private parties and/or known, private entities.