J-S30007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| EXPERITY VENTURES, LLC, THRIVEST LEGAL FUNDING, LLC, MEDSOLVE FINANCIAL GROUP, LLC, LEGAL ASSISTANCE FUNDING II, LLC, LAF MEDICAL SERVICES SPV II, LLC, LAF MEDICAL SERVICES II, LLC | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 2636 EDA 2024 |
| CHAD ADLER, RICHARD BERMAN, LEGAL ASSISTANCE FUNDING, LLC, LAF MEDICAL SERVICES, LLC | : : : : | |
| Appellants | : | |

Appeal from the Order Entered September 9, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220800239

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED NOVEMBER 19, 2025**

Appellants, Chad Adler, Richard Berman, Legal Assistance Funding, LLC ("LAF") and LAF Medical Services, LLC ("Surg-Assist"), appeal from the September 9, 2024 order denying their petition to open judgment. We affirm.

Appellees, Experity Ventures, LLC ("Experity"), Thrivest Legal Fundings, LLC ("Thrivest"), MedSolve Financial Group, LLC ("MedSolve"), Legal Assistance Funding II, LLC ("LAF II"), LAF Medical Services, SPV II, LLC ("LAF SPV"), and LAF Medical Services II, LLC ("LAF MedServices II), filed their initial complaint on August 1, 2022, and subsequently filed an amended complaint

_____

[*] Retired Senior Judge assigned to the Superior Court.

on October 25, 2022. In their amended complaint, Appellees alleged that they and Appellants "[were] in the business of litigation and medical receivables funding" and that the parties entered into two agreements for this purpose. Appellees' Amended Complaint, 10/25/22, at 3. Under the terms of the agreements, Appellants presented various funding opportunities to Appellees who, in turn, funded "the opportunities that me[t] certain criteria." **Id.** Thereafter, Appellees were to recoup their expenditures according to the "payment allocation provisions" included within the agreements executed by the parties. **Id.** Appellees, however, claimed that Appellants engaged in various fraudulent practices, resulting in Appellees inability to "receive[] or supervise[]" repayment. **Id.** Thus, Appellees brought suit against Appellants for fraud, conversion, breach of contract, unjust enrichment, and negligent misrepresentation.

On December 2, 2022, Appellants responded to Appellees' amended complaint by filing preliminary objections. Simultaneously, Appellees served upon Appellants their first set of requests for production of documents on November 28, 2022. Appellants, however, failed to timely comply with Appellees' discovery requests. Therefore, on April 13, 2023, Appellees filed a motion to compel and asked the trial court to enter an order requiring Appellants to produce the requested documents and information. While resolution of Appellees' motion to compel remained outstanding, the trial court entered an order regarding Appellants' preliminary objections. In particular, the trial court overruled each of Appellants' preliminary objections. **See** Trial

Court Order, 5/17/23, at 1-2. Appellants did not file an answer to Appellees' amended complaint. *See* Pa.R.C.P. No. 1028(d).

On June 6, 2022, the trial court convened a hearing to address Appellees' outstanding motion to compel. Following that hearing, on June 23, 2023, the trial court entered an order tailoring Appellees' discovery requests. The trial court's order states, in relevant part, as follows.

1. [Appellants] shall within [30] days of entry of this Order provide [Appellees] with all financial information and transactions pertaining to the 250 open, unmonetized cases funded by [Appellees] from January 1, 2019 to the present time.

2. Within [30] days from entry of this order, [Appellants] shall provide [Appellees] with all letters relating to the distribution of proceeds from settled cases that are now closed. These letters [included] records of distribution of proceeds from settled cases that are now closed. These letters [included] records of distributions between [Appellants] and law firms with whom [Appellants] have done business with since January 1, 2019 relating to funding support for law firm cases before they were settled or went to trial.

3. Within [30] days of entry of this Order, [Appellants] shall provide [Appellees] with the full settlement sheets and date of 1,000 closed cases as [Appellees] randomly select. These randomly selected cases shall have closed between January 1, 2019 and the present time.

Trial Court Order, 6/26/23, at 1. Appellants failed to comply with the trial court's order.

On August 3, 2023, Appellees filed a motion for sanctions against Appellants, asking the trial court to, *inter alia*, order production of the documents and communications set forth in its June 26, 2023 order for the

second time and, if Appellants' did not comply, to issue sanctions pursuant to Pa.R.Civ.P. 4019(c)(2). Appellees' Motion for Sanctions, 8/3/23, at 2. Appellants did not contest Appellees' motion. On September 21, 2023, the Honorable Ramy Djerassi granted Appellees' motion and directed Appellants to "provide full and complete productions to [Appellees] within ten [] days . . . or [Appellants] will be precluded from raising any defenses to [Appellees'] claims pursuant to Pa.R.Civ.P. 4019(c)(2)." Trial Court Order, 9/21/23, at *1 (unpaginated). Again, Appellants failed to comply with the trial court's order.

On March 1, 2024, Appellees served Appellants a 10-day notice of intent to enter praecipe for judgment, alerting Appellants to the fact that they failed to seek to file an answer to Appellees' amended complaint and that Appellees would seek to enter judgment if Appellants failed to file an answer within 10 days. On March 10, 2024, by way of e-mail correspondence, Appellees' counsel provided Appellants with an additional five days to file an answer, *i.e.*, by March 15, 2024. In the interim, on March 14, 2024, the parties convened for a settlement conference before the Honorable Gary S. Glazer. The parties were unable to resolve the matter. Appellants did not file an answer to Appellees' amended complaint on March 15, 2024. Thus, on April 3, 2024, Appellees entered default judgment against Chad Adler and Richard Berman and on April 9, 2024, Appellees entered default judgment against LAF and Surg-Assist.

On May 6, 2024, Chad Adler and Richard Berman filed a petition for relief from default. LAF and Surg-Assist did not participate in the petition.

*See* Petition for Relief From Default, 5/6/24, at 2, ¶ 6 ("Although there are [four d]efendants, default judgments were entered in this case against only the [two] individual defendants – Chad Adler and Richard Berman – on April 3, 2024").  In their petition, Adler and Berman averred, in relevant part, the following:

1. The petition [was] promptly filed [because] it was filed within 40 days from the date of default judgment.

2. The failure to [file an] answer [was] excusable because 1) [Adler and Berman], through counsel, have agreed that [Appellees] have no damages against [Adler and Berman] and because the parties agreed to stay the case for 60 days from March 14, 2024 in order to enable [Adler and Berman] to try to sell the open claims.

3. [Adler and Berman] have a meritorious defense because, *inter alia*, all payments and claims have been accounted for.

*Id.* at 11-12 (numbering altered).  Adler and Berman did not attach a proposed answer to their petition.  Instead, on June 6, 2024, they filed a praecipe to supplement their May 6, 2024 petition, which included a proposed answer to Appellees' amended complaint.

On July 9, 2024, the parties convened for a hearing on Adler and Berman's petition.  At the outset, the trial court clarified that the petition was, in fact, a petition to open default judgment, rather than a petition to strike default judgment.[1]  *See* N.T. Hearing, 7/9/24, at 4.  At the hearing, it was

_____

[1] The May 6, 2024 petition requested the trial court to "strike" the default judgment entered.  *See* Petition, 5/6/24, at 17.  The petition, however, did not allege that a fatal defect appeared on the face of the record, rendering the
*(Footnote Continued Next Page)*

established, eventually, that counsel for Adler and Berman also represented LAF and Surge-Assist but mistakenly thought default judgment was only entered against Adler and Berman. *Id.* at 53. Hence, counsel admitted that LAF and Surge-Assist did not participate in filing the petition to open judgment. *Id.*

Nonetheless, Appellants' counsel contended, first, that the reason for the delay in filing an answer to Appellees' amended complaint was his belief that, on March 14, 2024, the parties agreed to stay the matter. *See id.* at 18-19 (the court inquiring whether, "as a result of having that conversation with Judge Glazer, [counsel thought] that he had to or did not have to answer

_____

default judgment invalid. *See* Petition, 5/6/24, at 1-17. Instead, the petition discussed the legal authority relevant to a petition to **open** default judgment. *See id.* at 11-12. Importantly,

> A petition to strike a default judgment and a petition to open a default judgment request distinct remedies and generally are not interchangeable. A petition to open is an appeal to the discretion of the trial court; hence, we cannot reverse the trial court's determination absent a manifest abuse of discretion or error of law. Conversely, a petition to strike a default judgment should be granted where a fatal defect or irregularity appears on face of record. A court may only look at the facts of record at the time judgment was entered to decide if the record supports the judgment. A petition to strike does not involve the discretion of the court.

*Erie Ins. Co. v. Bullard*, 839 A.2d 383, 386 (Pa. Super. 2003) (internal citations and quotation marks omitted). Because the substance of the petition implicated a petition to open the default judgment, the trial court properly perceived it as one seeking to open, not strike, default judgment. *See id.* (addressing the "dispositive argument" which "raise[d] an issue that is properly framed as a petition to strike" judgment even though the appellant labeled the petition as a "Petition to Open and Vacate Judgment.").

- 6 -

a complaint?" Defense counsel indicting that his belief was based upon Appellees' counsel's suggestion that they "stay the case for 60 days."). This allegation was contested by Appellees' counsel. He stated:

> March 14th[,] we arrive before Judge Glazer. We have our settlement conference. And during the settlement conference, we made crystal clear that there [was] no extension to the answer. And to memorialize that, [defense counsel] followed up with me after the settlement conference on March 14th at 5:31 p.m., saying, Please let me know what we can do about the answer.
>
> If the stay was agreed to as [a temporary resolution reached on March 14, 2024], I don't know why you would be writing asking what we can do about the answer. He then again asked to discuss the answer on March 16th. And on March 19th, I wrote to him and I quote, I'm unable to get an extension on your time to answer the complaint.
>
> ***
>
> On March 25th, now 11 days after the same settlement conference, defense counsel writes me, "We still need to discuss the extension to the answer." Which I previously told him six days prior I had no further authorization to give them. We waited longer to allow them more time to provide an answer. Not giving a verbal extension but just waiting.
>
> By April 3rd, no answer had been filed. So we entered a default judgment against them and provided them notice.

*Id.* at 26-28. The aforementioned communications were attached to Appellees' oppositional brief. *See* Appellees' Brief in Opposition, 5/28/24, at Exhibits 13-16.

Next, the parties discussed the issue of Appellees' outstanding discovery requests, as well as the propriety of the trial court's September 21, 2022 order which indicated that, if Appellants failed to produce the documents outlined in

its June 6, 2022 order, they could not present any meritorious defenses at trial. The relevant exchange is as follows.

> [Appellees' Counsel]: … Mr. Adler has represented that he is able to somehow have these providers give the money to him and then he will be able to give it to us. The issue we [are] having, your Honor, is that they have [not] provided us the underlying documents to confirm that that is, in fact, the case. They have given us Excel[] documents without providing any substantiating documents and that was part of the issue in discovery.
>
> The court: Let me stop you.
>
> So your client is not providing the documentary basis for his collection efforts? That [is] a yes or no for me.
>
> [Appellants' counsel]: Judge, we [have] never declined to produce underlying information relating our spreadsheets. We believe that our spreadsheets are 1000 percent accurate.
>
> The court: That [is] not what I asked you.
>
> Supporting documentation. Is there documentation other than –
>
> [Appellants' counsel]: I have it. I mean, I have it. In all these shared spreadsheets, this is the first time that [Appellees' counsel] has asked for it but I can get it to him because I have underlying e-mails showing the status of all these cases.
>
> The court: All right. This is all a derivative analysis of either your client or counsel. Present this at a **Frye**[2] hearing. And I would need foundation before I would accept an opinion of what the value of something is. It just seems that part of it has not been provided to [Appellees].
>
> Now, is that because they did [not] ask for it or you did [not] promise it? How is it that this case like I said from when it first started growing whiskers and your client has [not] provided wholesome evidence of his efforts to collect[] these debts?

_____

[2] **Frye v. United States**, 293 F. 1013 (D.C.Cir.1923).

- 8 -

[Appellants' counsel]: I thought based on the information – again, this is the first time I [am] hearing that they want additional information relating to these claims. But I thought based on the spreadsheets we [have] been producing since last year, that that was the fulsome evidence they wanted. And they agreed with us that the $1.2 million that they are not saying that we owe them –

The court: That is their theory right now. Listen, you may prevail on your defense if I open judgment. However, I [am] just trying to figure who is doing what and what information has been provided.

[Appellees' counsel]: Judge, I [would] like to be heard on that. I like my client am frustrated. We tried to take Mr. Adler's deposition. He did [not] give his deposition. The basis of the preclusion order which I argued in September 2023 in front of Judge Djerassi was this underlying information.

\*\*\*

The court: … [Y]ou need to answer the very specific question that started this portion of the argument. And that is did you provide all the information that has been requested? It [is] a yes or no and you did [not] give me that yet.

[Appellants' counsel]: In terms of the spreadsheets, yes. In other words, we never got a follow-up saying, Hey, Pat, the spreadsheet looks good. Could you provide us the backup for these calculations, which I have this is the first time –

The court: Slow down. Slow down.

Did your client appear for noticed deposition?

[Appellants' counsel]: No.

The court: So there [is] no way for the plaintiff to have conducted discovery on this very topic other than through communications of counsel.

[Appellants' counsel]: Judge, I do [not] recall receiving a notice. I know we talked about depositions.

The court: Let me ask. Looking at plaintiffs' counsel right now, has either the request or the notice of deposition ever been propounded to the defendant[,] Mr. Adler?

- 9 -

[Appellees' counsel]: Yes. I [am] almost certain we provided a notice of dep[osition]. We provided a notice of deposition to opposing counsel, yes.

The court: Can you tell me without talking to your client in front of me today why he did [not] appear? Because this seems to be a significant part of the preclusion order [entered in September 2023] which may to a certain extent [] handcuff me as a part of the case?

[Appellants' counsel]: Judge, the impression and understanding that I had from dealing with [opposing counsel] was that the spreadsheets were sufficient. That that cleared up all the uncertainty. And that is, in fact, how the discussion went [during the settlement conference on May 14, 2024].

***

The court: Why was the preclusion order entered?

[Appellants' counsel]: For documents.

The court: You were [not] producing documents?

[Appellants' counsel]: That [is] correct.

[Appellees' counsel]: And the order says full and complete answers to all discovery requests. We submitted [requests for production of documents]. We spent the money on that. We asked for his deposition. We wanted the [documents] before we did the deposition and we got neither and we are sitting here two years later.

[Appellants' counsel]: Judge, I got to say this is the first time in six months that the plaintiff's counsel has taken the position that they do [not] know what [is] going on with the underlying cases. I [have] been willing. As a matter of fact, I called [opposing counsel] –

The court: I [am] sorry to interrupt you. I do [not] think that [is] quite what he was saying. I think where I [am] at now, I am really focusing on – and the principle as you well know is the law of the case may preclude me from doing something that [is] contrary to a litigated and adjudicated decision by Judge Djerassi. Which is specifically on this point of not cooperating with either oral deposition testimony under oath or producing documents that have been requested [during discovery].

- 10 -

Is there a dispute that there was no [requests for production of documents]?

[Appellants' counsel]: No, sir. No, sir.

\*\*\*

[Appellants' counsel]: No. We developed the spreadsheet and produced the spreadsheet.

The court: That [is] not the document.

[Appellants' counsel]: Right. Judge, this case started as a fraud case. You stole money and you gave us fraudulent cases. We then produced a spreadsheet that said, Wait a second. Everything that we bought we can account for. There [is] no fraud. And that [is] the way it has gone up until we left Judge Glazer's chambers.

And by the way, yes, I did raise the issue of the fact that the complaint was unanswered. But I did [not] want to end up here. That [is] why I raised it.

The court: Welcome back.

[Appellants' counsel]: Not that I did [not] want to end up in front of you, Judge. I did [not] want to end up litigating whether or not there [was] a default. And true, my secretary did not file a draft amendment –

The court: I [am] never going to allow you as a professional and former colleague to attribute your secretary in anything other than her good work.

[Appellants' counsel]: Fair enough, Judge.

The court: So let's go back. You see where I [am] stuck as a matter of law on a preclusion order that is based upon non-compliance with discovery which is central to the basis for this judgment. It [is] central to the behavior of your client when you [are] responsibly acting as a client and supporting his counsel's efforts. And as a result, is counsel able to be candid with opposing counsel as well as the court? This is Houston. We [have] a problem. How do I overcome Judge Djerassi's order by just the suggestion that you provided spreadsheets?

[Appellants' counsel]: The same way we dealt with it in front of Judge Glazer. Because Judge Glazer asked [opposing

- 11 -

counsel], What do you want to do. [Opposing counsel] said, We could sue them.

The court: You could do that.

[Appellants' counsel]: They can [not] provide defenses. We can try to pay; blah, blah, blah.

The court: You could do all those things.

[Appellants' counsel]: But the bottom line, Judge, there [is] no damages.

The court: Well, wait a minute. There [is] $2.27 million dollars worth of damages.

[Appellants' counsel]: They are saying the money that was misdirected was pocketed, which we did [not do]. We accounted for it and we can account for it.

The court: Well, that may be your good faith belief as counsel; right? But your client has [not] been put under oath. That [is] a problem. Your client has [not] produced documents. That [is] a problem. And this all goes to the meritorious defense and the underlying default. That [is] a problem. As a matter of law[,] we [are] looking at the issue of opening a default judgment before I get to the assumptive case and the tort case.

Without rehashing it, again you [are] the moving party on the default. I heard your argument at law. I want to make sure I understand that the amount of moneys in dispute are now over $2 million dollars. And also that has been propounded discovery that has gone unanswered and there [is] a preclusion order that is still enforced and in effect. I have not been asked to vacate or reconsider any of Judge Djerassi's orders. And I have [not] heard today any argument that they were entered in error or for some untoward reason.

So it is your understanding. Counsel, that [is] staring you in the face. That order of Judge Djerassi's is significant and it is not something that any court enters lightly in litigation. It seems to me the difficult[y] here is not of counsel's making but rather in his zealous representation of his client. It depends on his client to provide that information that I required and that has [not] happened.

- 12 -

[Appellants' counsel]:  Judge, I can only tell you that we thought the case was settled; okay?

The court: I[t] seems like it was [not], sorry to say.  I [am] not making fun of it.  This is so serious.

*Id.* at 32-45 (emphasis and footnote added).

The trial court, thereafter, concluded the hearing.  In so doing, the trial court trial court stated:

I have no legal issues.  The burden, first of all, has to be met to open.  And then one of the heavy factors I weigh is Judge Djerassi's previous order.

And aside from whether or not any of the discussions during a settlement or mediation with Judge Glazer is admissible in any context, nobody seems to have[,] other than the plaintiff[, any evidence that there was a mutual agreement to stay the proceedings, and plaintiff] moved this case forward to a judgment.  Your client's judgment to not appear for testimony.  Not produce documents that the Rule of Civil Procedure required to be produced or objected to.  Neither of those things have happened.

And then we have a more troubling aspect of the refusal to allow himself to be subjected to a deposition under oath.  So I [will consider all of that.  There [is] a lot here.  I [am] going to review the previous orders of court and I [will] issue an order forthwith.

*Id*. at 52-53.

On August 16, 2024, the trial court entered an order which stated, in relevant part, as follows:

It is further ORDERED that [Adler's and Berman's] Petition to Open Default is GRANTED and the court strikes the entry of Default as to all [Appellants].

[Appellants] shall file any pleadings responsive to [Appellees'] Amended Complaint within [20] days of the date of this order.

- 13 -

Trial Court Order, 8/15/24, at 1. On August 29, 2024, Appellees filed a motion for reconsideration, asking the trial court to reconsider its August 15, 2024 order opening default judgment. The next day, on August 30, 2024, Appellants filed an answer to Appellees' amended complaint. On September 9, 2024, however, the trial court entered the following order:

> AND NOW, this 9th day of September, 2024, upon consideration of [Appellees'] Petition for Reconsideration of the Court's Order dated August 12, 2024, and [Appellants'] response thereto, if any, it is hereby ORDERED that [Appellees'] Petition for Reconsideration is GRANTED.
>
> IT IS HEREBY ORDERED, having reconsidered the Court's Order dated August 12, 2024, that opens . . . the entry of default as to all [Appellants], said Order is VACATED.
>
> IT IS HEREBY FURTHER ORDERED [Appellants'] Petition to Open Default Judgment is DENIED. The default judgment entered against [Appellants] in this action shall remain imposed against [them] and will not be disturbed.

Trial Court Order, 9/9/24, at 1. This timely appeal followed.[3]

Appellants raise the following issues for our consideration.[4]

1. Did the [trial] court [] abuse its discretion by refusing to . . . open the default judgment?

2. Is a [trial] court limited to the petition and proposed answer when determining whether [a petition] for relief from a default judgment is based on a meritorious defense?

_____

[3] The trial court did not order Appellants to file a concise statement pursuant to Pa.R.A.P. 1925(b).

[4] We have reordered the issues presented by Appellants on appeal for ease of discussion and disposition.

3. Is a [trial] court['s] discovery order precluding defenses the same as an order entering default judgment?

4. Can a [trial] court enter a default judgment for the failure to file an answer to a complaint when the answer has been filed?

5. Can a [trial] court grant the relief requested in a [motion] to reconsider an order [opening] a default judgment without giving the other party an opportunity to respond[?]

Appellants' Brief at *3 (unpaginated).

On appeal, Appellants challenge the trial court's order granting Appellees' motion for reconsideration, vacating its August 12, 2024 order and, ultimately, denying their petition to open default judgment. Appellants aver that, in reviewing a petition to open judgment, a trial court must "look solely at the petition and answer to determine if there is a defense to the case." Appellants' Brief at *22 (unpaginated). As such, Appellants argue that, by considering the September 21, 2023 discovery order entered by Judge Djerassi which precluded them from "raising any defenses to [Appellees'] claims pursuant to Pa.R.Civ.P. 4019(c)(2)," the trial court erred as a matter of law. Trial Court Order, 9/21/23, at *1 (unpaginated). In addition, Appellants point to the fact that, unlike most instances of default judgment, "[t]his is not a matter where a defendant did not appear or did not litigate the case." Appellant's Brief at *31 (unpaginated). Instead, Appellants argue that they "actively litigated this matter for several years," including the filing of preliminary objections. *Id.* Therefore, Appellants argue that "[e]quity demands the opening of the present default judgment." *Id.*

- 15 -

This Court previously stated:

Unlike a petition to strike a judgment, "a petition to open a judgment is an appeal to the equitable powers of the court."

The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law. … An abuse of discretion is not a mere error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused.

**Roy by & through Roy v. Rue**, 273 A.3d 1174, 1186-1187 (Pa. Super. 2022) (internal citations omitted).

Under Pennsylvania law, "a default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint." **Id.** at 1187 (citation omitted). Importantly, this Court has previously explained that, when considering a petition to open a judgment, "matters *dehors* the record filed by the party in whose favor the warrant is given, *i.e.*, testimony, depositions, admissions, and other evidence, may be considered by the court." **Id.**, *citing* **Resolution Trust Corp. v. Copley Qu-Wayne Associates**, 683 A.2d 269, 273 (Pa. 1996).

In its 1925(a) opinion, the trial court set forth its rationale for granting Appellees' motion for reconsideration and, ultimately, for vacating its August 12, 2024 order and denying the petition to open default judgment. It stated:

Initially, the court granted the petition to open, having noted that the docket revealed, despite a failure to answer, the parties were fully engaged in litigating the action and were engaged in vigorous discovery and discovery motion practice. [Appellants] had not failed to appear, but had filed preliminary objections. [Appellees] sought reconsideration, setting forth in detail[] the factors necessary to satisfy an application to open a default and demonstrating that [Appellants] had failed to meet the requisites of those factors. The motion for reconsideration also presented the court with the transcript of the oral argument.

The motion outlined how the petition to open was not timely, a factor that the court did not consider because of the parties' regular engagement in the litigation. However, the more difficult obstacle, in the court's view on reflection, was the requirement of a meritorious defense. [Appellees] pointed out that the court had awarded sanctions for failure to comply with its discovery orders, sanctions that appear to have taken automatic effect upon a failure to comply within ten days. The court's previous ruling, without the benefit of the transcript, did not give full consideration or effect to the previous orders, which bind this court as the law of the case. The orders preclude [Appellants] from raising any defenses to [Appellees'] claim.

The court's colloquy at the hearing on the petition to open examined defense counsel at length as to the preclusive effect of these discovery orders. Upon review of the transcript, the court determined that defense counsel had no real answer to how those prior orders did not impact the ability to assert a meritorious defense. Thus, the court determined that [Appellees] had met the requirements for reconsideration in pointing out that the court's order ignored the binding effect of the prior orders, and the court granted reconsideration.

It is not for this court to agree or disagree with the substance[] of the prior discovery orders. Having concluded that those orders were binding, the court determined that its previous

- 17 -

> decision granting the petition to open was in error and vacated the ruling.

Trial Court Opinion, 3/14/25, at *1-*2 (unpaginated).

We discern no abuse of discretion on the part of the trial court. Contrary to Appellants' claims, our case law specifically permits a trial court to look to "testimony, depositions, admissions, and other evidence" when considering a petition to open a judgment. **Roy**, 273 A.3d at 1187.[5] Thus, the trial court acted well within its discretion in considering the effect of the September 21, 2023 order on the pending litigation. Importantly, during the July 9, 2024 hearing, it was firmly established that Appellants failed to comply with the terms of the order. **See** N.T. Hearing, 7/9/24, at 41 (Appellants' counsel admitting that they did not produce the requested documentation to Appellees). It was also established that Appellants never challenged the propriety of the September 21, 2023 preclusion order. **See id.** at 44. Finally,

_____

[5] Appellants cite **Reisinger v. York Hosp.**, 2013 WL 11253933 *1 (Pa. Super. 2013) (non-precedential decision) to support their claim that the trial court was required to look "solely on the petition and answer and accompanying briefs" when determining whether to open judgment. **See id.** at *4. Appellants reliance on **Resinger** is problematic for two reasons. First, it is a non-precedential decision, issued in 2013, and therefore was improperly cited to this Court. **See** Pa.R.A.P. 126(b) (allowing parties to cite an unpublished, non-precedential memorandum decision issued by this Court if it is issued after May 1, 2019). Second, and far more importantly, **Resinger** stands for the exact opposite proposition than Appellants advocate. Indeed, in **Resinger**, a panel of this Court reversed a trial court's order denying the appellant's petition to open and/or strike judgment of *non pros* because it relied **solely** on the petition, answer, and accompanying brief and failed to consider "additional discovery" or conduct an evidentiary hearing considering the "disputed issues of material fact." **Reisinger**, 2013 WL 11253933 at *3-*4.

Appellants did not present any evidence at the July 9, 2024 hearing to demonstrate that the September 21, 2023 order was invalid. **See id.** By its very terms, the September 21, 2023 order prevents Appellants from presenting a defense to Appellees' claims. Hence, the trial court astutely concluded that, considering the September 21, 2023 order, Appellants could not tender a meritorious defense and, as such, default judgment was appropriate. As it is well established, "if a petition to open a default judgment fails to fulfill any one prong of the three-prong test, then the petition must be denied. '[T]he trial court cannot open a default judgment based on the 'equities' of the case when the defendant has failed to establish all three of the required criteria.'" **Roy**, 273 A.3d at 1188-1189 (citations omitted).

Before we conclude, however, we briefly address the various ancillary arguments Appellants raise against the trial court's order. First, Appellants point to the fact that, on August 30, 2024, they filed an answer to Appellees' amended complaint, which the trial court directed them to do in its August 12, 2024 order opening default judgment. Because a "default judgment cannot be entered when there is an answer on the record," Appellants claim that the subsequent entrance of default judgment constitutes an error of law. Appellant's Brief at *17 (unpaginated). This claim lacks merit. "As a general rule, when a court vacates a previously entered order, the legal status of a case is the same as if the order never existed." **Reading City Dev. Auth. v.**

***Lucabaugh***, 829 A.2d 744, 749 (Pa. Commw. 2003).[6]  Hence, Appellants'

answer, filed pursuant to "an order [that] was a nullity from the outset," is

also a legal nullity and cannot operate to prevent the trial court from entering

default judgment.  ***Id.***

Second, Appellants argue that the trial court's September 9, 2024 order

is "legally invalid" because the trial court "did not provide [Appellants] an

opportunity to respond to [Appellees' motion] for reconsideration before it

granted the relief requested and entered a default judgment."  Appellant's

Brief at *17-*18 (unpaginated).  More specifically, Appellants contend that,

under Pennsylvania Rule of Civil Procedure 208.3[7] and Philadelphia Local Rule

_____

[6] "Although the decisions of the Commonwealth Court are not binding on this Court, we may look to them for their persuasive value." ***Commonwealth v. Brown***, 240 A.3d 970, 973 n.3 (Pa. Super. 2020) (citation omitted).

[7] Pennsylvania Rule of Civil Procedure 208.3 states, in relevant part, as follows:

> (a) Except as otherwise provided by subdivision (b), the court shall initially consider a motion without written responses or briefs.  For a motion governed by this subdivision, the court may not enter an order that grants relief to the moving party unless the motion is presented as uncontested or the other parties to the proceeding are given an opportunity for an argument.

> (b) A court, by local rule, numbered Local Rule 208.3(b), may impose requirements with respect to motions listed in the rule for the filing of a response, a brief or both.  Where a response is required, any party opposing a motion governed by Local Rule 208.3(b) shall file the response within [20] days after service of the motion, unless the time for filing the response is modified by court order or enlarged by local rule.

Pa.R.C.P. 208.3(a)-(b).

of Civil Procedure 208.3(a),[8] the trial court was required to wait for Appellants' response to Appellees' motion for reconsideration before entering its September 9, 2024 order. We note, however, that under 42 Pa.C.S.A. § 5505, a "trial court has broad discretion to modify or rescind an order, and this power may be exercised *sua sponte*." **Haines v. Jones**, 830 A.2d 579, 584 (Pa. Super. 2003). Moreover, as "a motion for reconsideration is addressed to the sound discretion of the trial court, the trial court is obviously in the best position to decide if additional testimony, briefs or argument are necessary to the court in reassessing its original order." **Moore v. Moore**, 634 A.2d 163, 167 (Pa. 1993). It is apparent that the trial court, in its discretion, determined that it did not need additional briefing or argument to adjudicate Appellees' motion for reconsideration. Because review and consideration of a motion for reconsideration is a matter solely within the discretion of the trial court, we decline Appellants' invitation to reverse the trial court's September 9, 2024 on this basis. **See Bollard & Associates, Inc. v. PA Associates**, 223 A.3d 698, 705 n.5 (Pa. Super. 2019) (declining to consider that the trial court "committed reversible error by ruling prematurely on the [motion] for reconsideration before any answer was due.").

_____

[8] Philadelphia Local Rule of Civil Procedure 208.3(a) allows a trial court to initially consider "motion for reconsideration" without a written response by the opposing counsel. Phila. Co. R.C.P. 208(a). It provides, however, that "the assigned judge may enter a **preliminary order** vacating the order in question **pending receipt of the response to the motion**." **Id.** at 208(a)(3) (emphasis added).

For the foregoing reasons, we affirm the trial court's September 9, 2024 order denying Appellants' petition to open judgment.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/19/2025